In re BLEHM LAND AND CATTLE CO., Debtor.

BLEHM LAND AND CATTLE CO., Plaintiff,

v.

James H. WILKINS, aka Howard Wilkins, Med-I-Dent Laboratories, Inc., Gordon Johnson and International Medical and Dental Laboratories, Inc., Defendants.

Bankruptcy No. 83 B 1901 J.
Adv. No. 83 G 1980.

United States Bankruptcy Court,
D. Colorado.

April 13, 1984.

Fairfield & Woods by Charles E. Matheson and Stephen W. Seifert, Denver, Colo., and Hale, Williams, Peterson & Power by David S. Power, Fort Collins, Colo., for plaintiff.

Kutak, Rock & Huie by Andrew J. Petrie, Denver, Colo., for defendant James H. Wilkins, aka Howard Wilkins.

Houtchens, Houtchens & Daniel by Jerry C. Daniel, Greeley, Colo. and Joel Laufer, Englewood, Colo., for defendant, Gordon Johnson.

No appearances for Med-I-Dent Laboratories, Inc. and International Medical and Dental Laboratories, Inc.

## MEMORANDUM OPINION AND ORDER

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion of defendant, James H. Wilkins ("Wilkins") to Dismiss the Complaint filed under 11 U.S.C. § 548 to Avoid a Fraudulent Transfer. Additionally, Wilkins has moved to dismiss a crossclaim on the basis that the Court is without jurisdiction and that the crossclaim is improper under F.R.C.P. 13(g), applicable here by virtue of F.R.B.P. 7013.

On December 6, 1983, the debtor-in-possession, Blehm Land and Cattle Co. ("Blehm") filed a Complaint under § 548 of the Code to Avoid a Fraudulent Transfer. On January 20, 1984, one of the co-defendants, Gordon Johnson ("Johnson"), asserted a crossclaim against Wilkins. Thereafter, Wilkins interposed a Motion to Dismiss the Complaint and, finally, a Motion to Dismiss Johnson's crossclaim. Blehm filed its Petition for relief under Chapter 11 of the Bankruptcy Code on May 2, 1983. The allegedly fraudulent transfer occurred in April, 1983.

Briefs have been filed on the Motions to Dismiss, with the last one being Wilkins' reply brief filed on March 9, 1984.

I have concluded that both Motions to Dismiss should be denied for the reasons hereinafter expressed.

## MOTION TO DISMISS COMPLAINT

■ The Complaint is brought by the debtor-in-possession under § 548 of the Code to avoid a fraudulent transfer from the debtor to defendant Wilkins, alleging that on or about April 13, 1983, the debtor assigned all of its right, title and interest in an Equipment Lease to defendant Wilkins under circumstances violating § 548(a)(2). The Complaint goes on to allege that thereafter, in October, 1983, Wilkins sold a por-

tion of the irrigation systems under the Lease to the co-defendant, Gordon Johnson.

In Wilkins' Motion to Dismiss, he postulates that the powers of a debtor-in-possession to avoid transfers under § 548 are subject to § 522(g) and (h) of the Code, authorizing a debtor-in-possession to exercise avoidance power *only* where "such transfer was not a voluntary transfer of such property by the debtor." § 522(g)(1)(A). *In re DeMeo,* 31 B.R. 905 (Bkrtcy.S.D.Fla.1983). He also cites *In re Shepherd,* 12 B.R. 151 (D.C.E.D.Pa.1981); *In re Echoles,* 21 B.R. 280 (Bkrtcy.Ariz. 1982); and *In re Saberman,* 3 B.R. 316 (Bkrtcy.N.D.Ill.1980), in support of his position. Finally, he asserts that since the transfer is voluntary, Blehm may not avail itself of § 548 and lacks standing to pursue its Complaint. For these reasons, Wilkins claims Blehm has failed to state a claim upon which relief can be granted under F.R.C.P. 12(b)(6) and BRP 7012.

Blehm argues that § 522 conditions the debtor's right to *exempt* property for its own benefit, but does not so restrict the *avoidance* powers of a trustee or debtor-in-possession, as a representative of the estate in a Chapter 11 proceeding.

When a Motion to Dismiss is presented, all material factual allegations are deemed to be true. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The Complaint is also construed in a light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). However, the plaintiff's factual allegations in the Complaint constitute binding admissions which may not be cured by supplemental pleadings. *Jones v. Hopper,* 410 F.2d 1323 (10th Cir. 1969), *cert. den.* 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).

A reading of the Complaint establishes that Blehm leased an irrigation system from Cargill Leasing ("Cargill") for a 60-month period with an option to purchase. In October of 1982, Blehm defaulted in the payment of an installment due under that Lease. At the time of the default, Blehm and Wilkins were negotiating for the sale of real property on which the irrigation systems were located. Blehm and Wilkins reached an agreement whereby Wilkins advanced monies which cured the default, and exercised the purchase option. Wilkins advanced the sum of $59,224.61 for this purpose, of which $25,000.00 was advanced to the debtor, who subsequently paid that amount over to Cargill. On April 13, 1983, Blehm assigned all of its interest in the irrigation system to Wilkins in reliance on Wilkins' representation that he would purchase the real property on which the system was located, at a price previously agreed upon between the parties. The Complaint then recites that Wilkins received a transfer of property within one year of the filing of bankruptcy at a time when Blehm was insolvent, and that Blehm did not receive consideration which was reasonably equivalent to the consideration given to Wilkins.

On May 2, 1983, the Chapter 11 proceeding was filed. At that time the debtor, by law, became a new entity, the "debtor-in-possession", with its own rights and duties. *Matter of Pacific Far East Line, Inc.,* 654 F.2d 664 (9th Cir.1981); *In re Brent Explorations,* 31 B.R. 745 (Bkrtcy.Colo.1983). The Code defines "debtor-in-possession" in § 1101(1) to be the debtor. Although the terms are interchangeable, the debtor and debtor-in-possession are not the same legal entity. *In re Harms,* 10 B.R. 817 (Bkrtcy. Colo.1981). Section 1107 gives the debtor-in-possession all the rights, powers and duties of a trustee, including the duty to protect, conserve and recover property for the benefit of the estate. *Ford Motor Credit Company v. Weaver,* 680 F.2d 451 (6th Cir.1982); *Matter of Halux, Inc.,* 665 F.2d 213 (8th Cir.1981). In fact, the debtor-in-possession is the representative of the estate under § 323(a). Section 323(b) and BRP 6009 empower the trustee or debtor-in-possession to commence or prosecute any action on behalf of the estate.

At this juncture, then, it becomes necessary to view the debtor's actions in his capacity as a "trustee" rather than his

capacity as a "debtor." This distinction becomes important in the construction of § 522(g) and (h), since the rights and powers of a "debtor" are separate and different from those of a "trustee" under these sub-sections.

A trustee, or debtor-in-possession, may utilize § 548 to avoid *any* transfer which Congress has defined to be fraudulent. If a transfer is avoided, the property is preserved for the benefit of the estate under § 550(a) and 551.

We then must examine the limitations on exemptions and avoidance provided in § 522(g) and (h). Section 522(g) applies limitations on the rights of the "debtor" to *exempt* property recovered by the "trustee" under sections enumerated therein, including §§ 550 and 551. It imposes no limitations on the *avoidance* powers of the *trustee*.

Section 522(h) allows the "debtor" to *avoid* a transfer to the extent the debtor could have exempted that property under subsection (g)(1) of § 522 if the *trustee* had avoided the transfer. This avoidance power of the debtor is subject to two further conditions set forth in § 522(h)(1) and (2). The salient factors here present with respect to those subsections are that:

"(1) such transfer is avoidable by the trustee under section ... 548 ..." § 522(h)(1); and

"(2) the trustee does not attempt to avoid such transfer." § 522(h)(2).

It must be noted that the Congress has here provided for certain avoidance powers to be vested in the *debtor* where the trustee has failed to act, although empowered to do so.

In the instant case, the debtor is a "debtor-in-possession," and acting as a trustee. The debtor-in-possession is not seeking an exemption. Thus, § 522(g) has no application. The debtor-in-possession, in its capacity as a trustee, is seeking to avoid an allegedly fraudulent transfer, under § 548. Thus, § 522(h) has no application, since that subsection applies to avoidance powers of the "debtor", as opposed to the "debtor-in-possession."

As noted in the legislative history, Congress contemplated that § 522(g) and (h) would "give the debtor the rights the trustee could have, but has not, pursued." Sen.Rpt. 95–989, 95th Cong., 2d Sess. 77 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5863. Here, the representative of the estate is seeking to avoid the transfer, but the action involves no claim of exemption by the debtor.

Wilkins quotes the following language from *In the Matter of DeMeo, supra,* and contends that it is dispositive authority:

"While 11 U.S.C. § 1107(a) give a Chapter 11 Debtor-in-Possession the rights of a trustee appointed under Chapter 11, the Debtor's avoidance powers which derive from 11 U.S.C. § 548 are subject to the limitations provided in 11 U.S.C. § 522(h) and (g)." *In the Matter of DeMeo, supra,* at page 908.

It does not appear the arguments relating to the distinction between a debtor and a debtor-in-possession were made in *DeMeo.* My reading of the Bankruptcy Code causes me to rule that a debtor-in-possession may avail itself of § 548 to avoid transfers in spite of §§ 522(g) and (h), although the debtor may not be able to exempt this same property for his, her or its own benefit.

None of the other cases proffered by Wilkins deal with a Chapter 11 debtor-in-possession. Thus, their holdings are clearly distinguishable. I agree with *DeMeo* insofar as it holds that § 522(g) and (h) limit a debtor's right to avoid transfers and exempt the property returned. However, *DeMeo* made no distinction between a debtor-in-possession and a debtor. That is a critical distinction under the facts of this case, which does not appear to have been discussed in *DeMeo.* Here, the debtor-in-possession has sought to exercise its duties as trustee under the Code, which are fiduciary duties. *Stein v. United Artists Corporation,* 691 F.2d 885 (9th Cir.1982). Those fiduciary responsibilities require the debtor-in-possession to recover property of the estate for the benefit of the estate. To

hold otherwise would deprive the debtor-in-possession of all avoidance powers where a transaction was voluntarily entered into by the debtor. I do not believe this comports with the intent of Congress in any way. Section 522 applies in Chapter 11 proceedings. *See*, § 103(a). This section must be applied in a manner consistent with the reorganization proceeding. *DeMeo* simply seems to apply § 522 in a mechanical manner as applicable to a debtor, without giving regard to the duties of a debtor-in-possession in the reorganization proceeding, as enumerated above.

I do not view § 522(g) or (h) as constituting an impediment to the action brought by this debtor-in-possession under § 548. Therefore, the Motion to Dismiss the Complaint is denied.

## MOTION TO DISMISS CROSSCLAIM

Wilkins has moved to dismiss the crossclaim for essentially two reasons. First, he claims it is not a related proceeding within the terms of General Procedure Order 1983–1(8), noting the crossclaim states a common law cause of action, cognizable under state law, for breach of contract against Wilkins and seeks no relief from the debtor-in-possession. Secondly, Wilkins alleges the crossclaim does not constitute a claim within the meaning of F.R.C.P. 13(g), applicable here by virtue of BRP 7013.

Applying the same criteria to analysis of the pleadings as under the Motion to Dismiss Complaint, it is noted that the crossclaim alleges Wilkins purported to convey the subject irrigation system to Johnson in October of 1983 for the sum of $40,000.00. Johnson advanced this sum to Wilkins. Wilkins has not transferred the property to Johnson despite efforts to obtain that property, nor has Wilkins returned the $40,-000.00. Johnson alleges incidental damages in the amount of $2,000 and lost net profits of $24,000 due to Wilkins' failure to abide by the parties agreement. Lastly, Johnson faces a lawsuit by the prospective purchasers with whom he contracted. Those purchasers assert Johnson owes them $6,000 for his breach of contract.

Johnson claims, by way of an Affirmative Defense to the Complaint, an interest in the irrigation system pursuant to § 548(c), which gives a good-faith purchaser for value a lien on property which is the subject of transfer. If the transaction is set aside, Johnson requests an order conditioning avoidance upon payment of $72,000 from either Blehm or Wilkins. If the transfer is not set aside, Johnson requests an order determining he is the owner of the property, entitled to immediate possession.

■ It is evident the action on the crossclaim could have been brought between Johnson and Wilkins absent any bankruptcy by Blehm Land and Cattle Co. However, the civil proceeding initiated by the crossclaim, arising as it does in the context of this bankruptcy action, appears to have a reasonable nexus to the bankruptcy case under Title 11. *See, In re Universal Profile, Inc.*, 6 B.R. 194 (Bkrtcy.Ga.1980).

The United States District Court for the District of Colorado has promulgated General Procedure Order 1983–1, wherein it has referred to the bankruptcy judges all cases under Title 11 and all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. General Procedure Order 1983–1 ¶ 2(a). Paragraph 8 of that General Procedure Order then defines "related" proceedings as meaning "cases removed from other courts and those civil proceedings which could have been commenced in either the District Court or in state court, but for the filing of the bankruptcy petition. A proceeding does not become 'related' merely because its outcome may be determined by state law." General Procedure Order 1983–1 ¶ 8.

This General Procedure Order by the District Court was, of course, rendered necessary as a result of the decision of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Prior to the decision in *Northern Pipeline*, the Congress had clearly provided for the bankruptcy courts

to exercise jurisdiction over all civil proceedings involving a bankrupt estate. The intent of Congress, as expressed in 28 U.S.C. § 1471(b), was to "leave no doubt as to the scope of the bankruptcy court's jurisdiction," H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S.Code Cong. & Admin.News 1978, p. 6401, by conferring on the bankruptcy court, through the District Court, jurisdiction over all bankruptcy cases and all civil proceeding arising under Title 11, or arising in or related to cases under Title 11.

However, with the advent of the Supreme Court's decision in *Northern Pipeline* and the continuous inaction of Congress in response to that decision, it once again became necessary to examine a bankruptcy court's jurisdiction by bifurcating "cases under Title 11 and all civil proceedings arising under Title 11, or arising in" Title 11 from those "proceedings ... related to" cases under Title 11. In related proceedings, as defined in ¶ 8 of General Procedure Order 1983–1, the bankruptcy court can make no final judgments. That is left to the District Court, upon suggested findings, conclusions and a proposed judgment by the bankruptcy court.

It is in the context of this jurisdictional quagmire that the crossclaim must be examined to determine if it is a "proceeding arising under" Title 11, or a "proceeding arising in" a case under Title 11, or a "proceeding related to" a case under Title 11. Congress endeavored to lend some assistance to this definitional exercise in its House Report which accompanied the House bill, H.R. 8200, wherein the following explanation was given for the phrase granting jurisdiction over "civil proceedings arising under Title 11":

"The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy courts, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of title 11. Many of these claims would also be claims arising under or related to a case under title 11." H.R. Report No. 595, 95th Cong. 1st Sess. 445 (1977).

*Collier on Bankruptcy* suggests that what the foregoing language seems to say is that if a cause of action which has been pleaded is one which either is created by Title 11 or is an administrative matter concerning a bankruptcy estate, then the civil proceeding is one "arising under Title 11." 1 *Collier on Bankruptcy*, ¶ 3.01 p. 3–40 (15th Ed.1979).

But, alas, little assistance is afforded us in determining what constitutes civil proceedings "arising in ... cases under Title 11." It is noted that when the 1978 Bankruptcy Code was being considered in the Congress, the Bankruptcy Commission listed various examples of jurisdictional items to be heard, in its proposed bill, HR 31, 94th Cong. 1st Sess. §§ 2–201(a), 2–201(b) (1975). The equivalence to those items under Title 11 were set forth in HR 8200, which further listed the various jurisdictional matters the bankruptcy courts should be able to hear, along with all items the bankruptcy courts were then able to hear under the Bankruptcy Act, § 2a(2A). *See*, H.R.Rep. 595, 95th Cong. 1st Sess. 446 (1977), U.S.Code Cong. & Admin.News 1978, p. 6401.

The Commission's bill, in listing the various matters the bankruptcy court would be able to hear, referred to numerous "controversies arising *out of* a case." (emphasis supplied). *See*, HR 31, 94th Cong. 1st Sess. § 2201(a). Thus, the legislative history favors us with an additional term—controversies "arising out of" a case, as well as those now "arising in" a case or proceedings "related to" a case under Title 11. The question then remains whether Con-

**654**

gress intended some difference in adopting the language "arising in" a case and not adopting the reference to "arising out of" a case under Title 11—and what difference is there between matters "arising in" from those "related to" cases under Title 11? How would a "related" proceeding come before the bankruptcy court unless it arose in, or out of, a case under Title 11?

The recent legislation promulgated by the House of Representatives in HR 5174, now lying in the lap of the Senate, lends absolutely, unequivocally and without reservation no assistance to a resolution of this jurisdictional nonsense.

It appears many proceedings consist of a hybrid of matters arising under, arising in or related to cases under Chapter 11. We are truly left with less definable standards than those available in pornography, wherein Justice Stewart was moved to write: "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, ..." *Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

Unfortunately, in this matter of Bankruptcy jurisdiction, we aren't sure the distinctions can always be recognized, let alone defined.

The crossclaim before me arises in the context of a case pending before me under Title 11. It also appears to have a reasonable nexus to the bankruptcy case presently pending in this court. As such, it is related to the case under Title 11. Johnson asserts a statutory lien arising under the Bankruptcy Code, and, pursuant to 28 U.S.C. § 1471(b) the District Court has original jurisdiction over the matter. The District Court has referred the case to the bankruptcy court for resolution. The indefinable definitions before us could be the subject of indefatigable flagellation. I choose not to engage in the exercise further. I shall hold that this is an action arising in a case under Title 11, which is related to that case now pending in this

court. It is properly before the court and the motion to dismiss the crossclaim will be denied. However, upon conclusion of the matter, I will enter findings, conclusions and a proposed judgment which will be certified to the District Court to resolve as it deems appropriate pursuant to General Procedure Order 1983–1.

Accordingly, it is ordered that Wilkins shall file an answer to the Complaint within ten (10) days of the date of this Order; it is further ordered that Wilkins shall file an answer to the crossclaim within ten (10) days of the date of this Order.