769 So.2d 1113 (2000)
SOUTHAMPTON DEVELOPMENT CORP., Appellant,
v.
PALMER REALTY GROUP, INC., Appellee.
No. 2D99-4165.
District Court of Appeal of Florida, Second District.
October 4, 2000.
*1114 Louis X. Amato, P. A., Naples, for Appellant.
Stephen H. Kurvin, Sarasota, for Appellee.
DAVIS, Judge.
Southampton Development Corporation appeals the trial court's final judgment awarding Palmer Realty Group, Inc., a real estate commission in the form of a finder's fee. The trial court found that Southampton breached its agreement with Palmer when the subject real property was sold during Southampton's Chapter 11 bankruptcy proceedings, and Palmer did not receive a commission. We disagree and reverse.
Nina Arnold was a realtor/associate employed by Palmer. Through her business efforts, she learned that Taylor Woodrow Communities, a general partnership, was interested in buying real estate in Florida. She further learned that Southampton desired to sell a partially completed development in Naples, Florida, called "The Southampton." In May of 1993, she telephoned the president of Southampton, who lived in Toronto, Canada. She negotiated a fee agreement with him and then confirmed the terms of the conversation by letter. The letter provided: "It is understood and acknowledged by you, as Seller, that if my Buyer goes to contract with you, the following commission schedule will apply...." The President of Southampton signed the letter acknowledging and accepting the terms and returned it by facsimile. Arnold then wrote to Southampton and registered Taylor Woodrow and two of its agents as "her buyers."
Arnold proceeded to assist Taylor Woodrow in obtaining the necessary information that it needed to evaluate the property for possible purchase. At some point in time, Taylor Woodrow did submit an offer to Southampton. However, that offer was rejected as too low.
In May of 1994, Arnold had a conversation with John Peshkin, her contact at Taylor Woodrow. Peshkin advised her that Taylor Woodrow was no longer interested in the Southampton development because Southampton was "impossible to deal with." Arnold then began to attempt to locate other properties in which Taylor Woodrow might be interested.
On July 8, 1994, Southampton filed a voluntary petition for Chapter 11 bankruptcy. Southampton did not list Palmer as an interested party, nor did Southampton give Palmer notice of the bankruptcy proceedings. Immediately prior to the filing, Southampton entered an agreement to sell "The Southampton" to Community Development Corporation (CDC). The closing was delayed, however, and Southampton was forced to file for bankruptcy protection by its creditors, who scheduled a foreclosure sale.
On August 1, 1994, Southampton, now as debtor in possession, filed a motion asking the bankruptcy court to approve the sale of the property to CDC. However, some of the creditors objected to the sale. On August 30, 1994, the bankruptcy court agreed that the property should be sold, but delayed the sale to CDC to allow other bids to be submitted. Southampton received three bids, including one from Taylor Woodrow. Southampton filed its "recommendation" suggesting that the bankruptcy court approve the sale to CDC.
*1115 On September 13, 1994, after hearing several of the Southampton's creditors' objections, the bankruptcy court rejected Southampton's recommendation to sell to CDC, but approved a sale to Taylor Woodrow. On January 20, 1995, the bankruptcy court entered its order confirming Southampton's plan of reorganization, including the sale of "The Southampton" to Taylor Woodrow.
On September 7, 1995, Palmer filed an application for compensation with the bankruptcy court. The bankruptcy court denied this request on November 13, 1995. Palmer again sought relief in the bankruptcy court by filing an amended proof of claim on February 5, 1996. The bankruptcy court again denied the claim, but did so "without prejudice to the claimant to assert such a claim against the debtor in a non bankruptcy forum based upon the alleged lack of notice of the instant bankruptcy case."
Palmer then filed a three-count complaint against Taylor Woodrow and Southampton. Palmer sued Taylor Woodrow in count I for interference with right to contract and in count II for unjust enrichment. The trial court granted summary judgment in favor of Taylor Woodrow on these two counts.[1] In count III, Palmer sued Southampton for breach of contract. After a one-day non-jury trial, the trial court found that Palmer was without notice, actual or otherwise, of the bankruptcy proceedings. The trial court further found that "the bankruptcy was a nullity" with regard to Palmer. The final judgment concluded that Palmer had a contract that was "fully performed" and was entitled to be paid the commission. We disagree.
The agreement between Palmer and Southampton was not a contract. Rather, it was an offer by Southampton to enter into a unilateral contract, an offer that called for Palmer's acceptance by performance. See Mark Realty, Inc. v. Rogness, 418 So.2d 373, 376 (Fla. 5th DCA 1982); Joseph M. Perilla, Corbin on Contracts § 2.30, at 260 (revised ed.1993). Palmer made no promises to Southampton and was under no obligation to do anything. There was no time period stated in the agreement, and the terms were such that Southampton could transfer the property to any party other than Taylor Woodrow without incurring an obligation to Palmer. A commission contract was never created because there could be no "acceptance" until Southampton and Taylor Woodrow entered into a sales contract, which never occurred.
Consequently, Southampton did not list Palmer as a potential creditor in the bankruptcy proceeding. Several months having passed since Southampton rejected the Taylor Woodrow offer, Southampton concluded that as of the date it filed the Chapter 11 petition, there was no outstanding contractual obligation to Palmer. Moreover, when the bankruptcy proceedings began, "The Southampton" property became a part of the bankruptcy estate; it was no longer held privately by Southampton. Although Southampton retained possession of the property, it did so only in its capacity as the debtor in possession. A debtor in possession is a separate entity, like a trustee in other proceedings, whose rights and duties are separate and distinct from the debtor itself. See Blehm Land & Cattle Co. v. Wilkins, 38 B.R. 648 (Bankr. Colo.1984).
Accordingly, the owner of the property at the time of the sale was the debtor in possession, under the direction of the bankruptcy court, not Southampton, the party to the Palmer "agreement." Since the debtor in possession was not the party who extended the offer to Palmer, the anticipated contract between Southampton and Taylor Woodrow never came into existence. Consequently, the trial court erred in finding a breach of a non-existent contract.
*1116 The trial court found that the bankruptcy was a "nullity" as to Palmer because Southampton failed to give Palmer notice of the Chapter 11 proceedings. However, at best, the failure to give notice only allows Palmer to enforce whatever rights it had against Southampton at the time of filing the bankruptcy proceeding. See 11 U.S.C. § 523(a)(3) (2000). Even Palmer acknowledges that it had no potential claim against Southampton until the sale to Taylor Woodrow. Since Taylor Woodrow's contract for the purchase of the real property was not with Southampton, but rather with the debtor in possession, Palmer is now without a claim against Southampton.
Reversed and remanded with instructions to enter a final judgment in favor of Southampton.
ALTENBERND, A.C.J., and FULMER, J., Concur.
NOTES
[1] This decision was affirmed by this court in Palmer Realty Group, Inc. v. Taylor Woodrow Communities, 731 So.2d 666 (Fla. 2d DCA 1999) (table).