In re NATIONAL EQUIPMENT &
MOLD CORPORATION, Debtor.

NATIONAL EQUIPMENT & MOLD
CORPORATION, Plaintiff,

v.

CAPITAL, INC., et al., Defendants.

Bankruptcy No. 84–0114.

Related Case No. 83–00264.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 9, 1986.

See also, Bkrtcy., 33 B.R. 574, Bkrtcy., 60 B.R. 133, Bkrtcy., 64 B.R. 239.

Thomas J. Schank, Toledo, Ohio, for plaintiff.

Theodore M. Rowen, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION, PROPOSED FINDINGS OF FACT, AND CONCLUSIONS OF LAW

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Withdrawal of Reference filed by the Defendant in the above entitled adversary action, and the Order Of Reference entered by the United States District Court for the Northern District of Ohio, Western Division. Pursuant to the Order Of Reference, this Court is to submit to the District Court proposed findings, conclusions, and orders relative to the question of whether or not the actions set forth in this case are core proceedings as contemplated by 28 U.S.C. Section 157(b). The parties have filed their arguments relative to the merits of this issue and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the

Court proposes the following findings, conclusions, and orders:

### FACTS

The facts in this case, to the extent relevant to the Motion For Withdrawal of Reference, do not appear to be in serious dispute. At the time this adversary case was filed, the Plaintiff was a Debtor-in-Possession in a case filed with this Court under Chapter 11. However, that case has subsequently been converted to a proceeding under Chapter 7. This adversary case is presently being prosecuted by the Trustee in the Chapter 7 proceeding. The Defendant is an entity with which the Debtor attempted to do business during the pendency of the Chapter 11 case.

As a part of its reorganization effort, the Debtor desired to enter into an arrangement, whereby it could establish a line of credit with a financial institution. The purpose of this credit was to create a source from which the Debtor could obtain sufficient funds to consolidate its payments to a majority of its pre-petition creditors. On or about January 6, 1984, the Debtor entered into such a contract with the Defendant. The terms of this contract required the Debtor to deposit a "commitment fee" of Thirty-two Thousand and no/100 Dollars ($32,000.00) into an escrow account. This fund would be held in escrow until such time as the Defendant actually extended the contemplated loan. When the loan was made, the Defendant would be entitled to receive the escrowed funds. If, however, the parties were unable to "close" on the loan, the Defendant would be entitled to demand a percentage of the "commitment fee" from the escrow agent. The remainder would be returned to the Debtor.

Although the Debtor, pursuant to the terms of the contract, deposited the "commitment fee" in escrow, it appears that the parties were unable to finalize the intended transaction. Specifically, it does not appear that the loan was ever made to the Debtor. However, it does appear that the Defendant demanded and received from the agent the funds held in escrow. Although it appears that the parties attempted to resolve between themselves the controversy as to whether or not the Defendant was entitled to any of the "fee", they were unable to do so. It should be noted that as a part of that attempt, the Defendant replaced in escrow a percentage of the funds originally held by the agent. Having failed to resolve the controversy, and in furtherance of its efforts to recover those funds, the Debtor filed the action which is presently before the Court.

In asserting this action, the Plaintiff contends that the Defendant failed to extend the contemplated loan within the time period set forth in the Contract. It is also alleged that the Defendant breached the contract by assuming possession of the escrowed funds without first satisfying the obligations imposed by the agreement. In its Answer to this action, the Defendant denied a majority of the allegations found in the Amended Complaint. The Defendant also asserted counterclaims against the Debtor, wherein it attempts to recover the funds which were replaced in escrow and which are claimed by the Defendant to be owed pursuant to the contract. The Defendant has also claimed that it is entitled to recover from the Debtor certain expenses it incurred during the process of negotiating the contract and the subsequent settlement.

The Motion presently before the Court was filed by the Defendant in order to determine this Court's jurisdiction to adjudicate the aforementioned actions. Although this Motion was transferred to the United States District Court for the Northern District of Ohio, Western Division for consideration, that Court has returned the Motion to this Court for proposed findings, conclusions, and orders relative to the issue of whether or not these actions are core proceedings. In support of its Motion, the Defendant argues that because these actions are actions arising under state law from an alleged breach of contract, and because the action is one which would, in the absence of Title 11 proceedings, have been brought in state Court, it is a non-core proceeding. The Trustee, though not conceding that this action is a non-core pro-

ceeding, argues that the Motion was not timely filed. Therefore, it is argued that the Defendant has consented to this Court's dispositive jurisdiction. The Trustee also argues that the Defendant's filing of a counterclaim constitutes a consent to this Court's jurisdiction.

### LAW

The provisions of 28 U.S.C. § 157(b) state in pertinent part:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate;
>
> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;

The provisions of this statute set forth, in part, those proceedings which may be adjudicated in the Bankruptcy Court as core proceedings. In doing so, it necessarily establishes a category of non-core proceedings which, pursuant to 28 U.S.C. § 157(c), may not be dispositively adjudicated by the Bankruptcy Court without the consent of the parties. The reasons for this statutory distinction have been adequately discussed in prior cases, *see for example, Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.)*, 52 B.R. 334 (Bkcy. W.D.N.Y.1985), and need not be reiterated here.

In determining whether a case falls within or without the category of core proceedings, it appears that the Courts have made that determination on a case-by-case basis. There has, however, been a split of authority as to whether, in applying the statute, there should be a "narrow" or "broad" interpretation of its provisions and intent.

*Mansker v. Campbell (In re Mansker)*, 60 B.R. 803 (Bkcy.D.Mass.1986). This Court has determined that where an action can be characterized as being an action under both state law and Title 11, it may be prosecuted as a core proceeding in the Bankruptcy Court subject only to appellate review under 28 U.S.C. § 158. *National Equipment & Mold Corp. v. Apollo Tire Co., Inc. (In re National Equipment & Mold Corp.)*, 60 B.R. 133 (Bkcy.N.D.Ohio 1986).

However, a review of the provisions of 28 U.S.C. § 157(b) reflects that those actions set forth therein are not intended to be exhaustive of those which can constitute core proceedings. As stated in *Mansker v. Campbell*, supra, a broad interpretation would include within the scope of core proceedings any action which arises out of an attempt by the Debtor to exercise one of the powers available under Title 11. One Court has stated that when the events which give rise to the controversy occurred during the pendency of a debtor's Chapter 11 case, it is related to the debtor's activities as a debtor-in-possession and, therefore, the administration of the case. Accordingly, that Court held that any action taken during or arising from the existence of a Chapter 11 case will, if it materially affects the progress of the case, be a core proceeding. *L.A. Clarke & Son, Inc. v. Bullock Const., Inc. (In re L.A. Clarke & Son, Inc.)*, 51 B.R. 31 (Bkcy.D.D.C.1985). Although not all Courts have found that post-petition controversies which affect the estate are core proceedings, *see, Sokol v. Massachusetts Mutual Life Ins. Co. (In re Sokol)*, 60 B.R. 294 (Bkcy.N.D.Ill.1986), it appears that the developing test focuses on the nexus between the nature of the controversy to be litigated and the degree to which the action affects, or is available under, Title 11 proceedings.

A review of the actions presently before the Court finds that they are actions sounding in contract which arise from the alleged breach of the parties' agreement. This contract involved the Debtor's attempt to enter into a loan agreement with a party which is otherwise unrelated to these proceedings. In the absence of Title 11 pro-

ceedings, this case could have been brought in state Court. Inasmuch as the provisions of Title 11 and 28 U.S.C. § 157(b) do not, in and of themselves, address actions for breach of contract, it would initially appear that this action would be a non-core proceeding which is related to a case under Title 11.

However, those factors are not the only considerations which must be made in assessing an action's core or non-core status. As has been indicated, if the action seeks relief which is independently available under Title 11, or if the action has a nexus to an action taken by a debtor under the auspices of a bankruptcy case, then the action can constitute a core proceeding. In the present case, it is apparent that the contract in question arose during the pendency of the Debtor's Chapter 11 case. In that regard, the Debtor's participation in the contract was pursuant to the authority of 11 U.S.C. § 364, whereby debtors may, with the permission of the Court, enter into lending transactions. Furthermore, the relief sought in both the Complaint and the Counterclaim involves the disposition of estate property which, by virtue of the "commitment fee" payment, was made a part of the parties' dealings. This disposition will effect the administration of the estate, inasmuch as it will, in part, determine the amount of funds available for distribution to creditors. In addition, the outcome of this litigation will determine whether or not the Defendant is a post-petition creditor, and whether there exists for the Defendant a post-petition claim. Finally, in light of the fact that the contract never reached fruition, the Amended Complaint, though not denominated as such, can be construed as an action to recover estate property under 11 U.S.C. § 542.

In light of these considerations, it is evident that this litigation materially concerns the administration of the estate and affects the liquidation of the Debtor's assets. It is also evident that this case involves the Defendant's claim against the Debtor's estate for the obligation which arose under the contract when the loan was not made. Furthermore, the action arises out of the exercise of the Debtor's authority under 11 U.S.C. § 364. Since the object of the Complaint seeks to recover property of the estate which was employed in an effort to consummate the contract, and since the Debtor has claimed that the Defendant is not entitled to receive that property, the action is one for the turnover of estate property. In light of the fact that the provisions of 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(E), and 157(b)(2)(D), respectively, designate such matters as core proceedings, it must be concluded that this action is a core proceeding.

■ It is recognized that an action such as the one at hand is an action which sounds in contract and arises under state law. However, that fact alone does not automatically relegate such actions to non-core status. As indicated in 28 U.S.C. § 157(b)(3), the determination as to whether or not an action is a core proceeding is not made dependent upon the action's involvement with state law. Although an action may arise under state law, it may also arise under other authority. As previously indicated, a basis for these actions is available under 11 U.S.C. §§ 105(a), 364(c), 502(b), and 542. The ability to characterize an action as one arising under Title 11 or one which is traditionally related to the prosecution of a case under Title 11 avoids the constitutional improprieties that might otherwise exist. *See, Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As a result, this Court may adjudicate this action subject only to appellate review under 28 U.S.C. § 158.

It has been brought to the attention of the Court that the Defendant, Capital, Inc., appears to have filed for relief from creditors under 11 U.S.C. Chapter 11. The case was filed under the name *In re Latipac,* Case No. 86–3564–8P1, in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

It is therefore the opinion of this Court that the above entitled adversary action be found to be a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(E), and 157(b)(2)(*O*).

In reaching this conclusion the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that these proposed findings, conclusions, and orders be transferred by the Clerk of the Bankruptcy Court to the United States District Court for the Northern District of Ohio, Western Division pursuant to the Order of Reference.