In the Matter of SPECIALTY PRODUCTS, INC., Debtor.

John GLUCKIN, et al., As the Official Creditors' Committee of Specialty Products, Inc., Plaintiff,

v.

Walter L. ROSS, Lancaster Colony Corporation and Specialty Products, Inc., Defendants.

Bankruptcy No. 82–00192N.
Adv. No. 83–0110N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Jan. 6, 1989.

Shepard Lane, New York City, for plaintiff.

Russell S. Thomas, Trauner, Cohen & Thomas, Atlanta, Ga., for defendant Walter L. Ross.

Frank C. Dunbar, III, Squire, Sanders & Dempsey, Columbus, Ohio, for defendant, Lancaster Colony Corp.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

The Court conducted a trial in the above-referenced adversary proceeding on April 20, April 21, and June 13, 1988. On request of the Court, counsel for all parties submitted proposed Findings of Fact and Conclusions of Law by September 19, 1988. Having considered the documents submitted into evidence, the record in the case file, the testimony of witnesses presented at the trial and recorded in the transcripts, and the proposed orders filed by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On May 20, 1982, Specialty Products, Inc. ("Specialty Products") filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

2. Defendant, Walter L. Ross ("Ross"), was the president and sole shareholder of Specialty Products at the time of the filing of the petition. Prior to his acquisition of Specialty Products, Ross had extensive business experience and has an exceptional educational background.

3. Under the management of Ross and his associates, Specialty Products moved from a loss to a profit position in the months immediately preceding the filing of the Chapter 11 petition.

4. During the course of the Chapter 11 case, the debtor's counsel, Ross, Ross' subordinates, and representatives of the plaintiff Creditors' Committee attempted to locate entities that might be interested in purchasing the debtor's assets or business. Defendant, Lancaster Colony Corporation ("Lancaster") ultimately became the purchaser of the debtor's assets, and the plan of reorganization accomplished the distribution of the proceeds of such sale to the creditors.

5. Prior to the sale of assets which was approved by the Court and endorsed by the Committee, Lancaster had made three other offers which were rejected. The amount offered by Lancaster was reduced with each new offer, but each of the earlier offers included a compensation package to Ross in return for his covenant not to compete and for consulting services.

6. Following the purchase by Lancaster of the assets of Specialty Products, Ross received the following consideration from Lancaster: (a) the forgiveness of a debt of $49,000.00 owed by Ross to the debtor; (b) lease payments in the amount of $6,960.00 which Lancaster agreed to make for two cars used by Ross and his family; and (c) direct payments in the total amount of $126,969.36. When the Committee endorsed the sale to Lancaster, it reserved the right to challenge the compensation package received by Ross and ultimately did so by filing the instant adversary proceeding.

7. In its acquisition of other businesses outside of the bankruptcy context, Lancaster had required non-competition agreements with the chief operating or executive officers, which agreements were for at least three-year terms.

8. In the series of offers by Lancaster and during the course of negotiations, the amount offered to Ross was reduced, and the term of the non-competition covenant was reduced from nine years to three years.

9. There is no direct evidence that Ross withheld financial information relating to Specialty Products from potential purchasers or that he in any other way attempted to discourage any entity other than Lancaster from making an offer to purchase the debtor's assets.

10. Although representatives of Lancaster testified that one consideration given by Ross in exchange for his compensation was his promise to make himself available for consulting services relating to the purchased business, no such services were requested or rendered after the 1982 calendar year. The only consulting services performed by Ross occurred during the early portion of the three-year term of the consulting/non-competition agreement.

11. Ross did, on occasion, inquire of Lancaster personnel whether certain employment or entrepreneurial opportunities that he had would be considered a violation of his covenant not to compete. Ross declined such opportunities on at least two occasions during the term of his non-competition agreement when Lancaster informed him that accepting the opportunities would violate the terms of the agreement.

12. Ross' current employment and interest in a business would, in the judgment of both Lancaster and Ross, be in violation of the non-competition agreement, had its term not expired.

13. There is no direct evidence that the negotiations between Lancaster and Ross regarding his compensation package affected the purchase price offered by Lancaster for the debtor's assets.

14. When the sale to Lancaster was approved, it was disclosed to the Court and to the Committee that Ross' compensation package was still being negotiated and was not related to the bid for the debtor's assets.

## CONCLUSIONS OF LAW

The Committee asserts that Lancaster and Ross are jointly and severally liable for the amounts paid to Ross, or for the benefit of Ross, on the theory that Ross violated his fiduciary duty to creditors by negotiating benefits for himself rather than seeking to obtain the highest price possible for the sale of assets and that Lancaster induced this breach.

There is little reported case law on the subject of "sweetheart deals" with a debtor's insiders, and the Court is aware of no case involving a challenge to such an arrangement after the underlying sale of the debtor's assets has been approved and irrevocably finalized. In both *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir.1986), and *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bankr.E.D. Pa.1987), the issue of "insider dealing" was addressed in regard to the good faith element of approving a sale of the debtor's assets in one case and reversing on appeal the decision to approve such a sale in the other case.

In the case at bar, the sale of the assets of Specialty Products was approved and not challenged on appeal, and the sale, is not, and could not be challenged in this adversary proceeding. Therefore, the discussions in *Abbotts Dairies* and *Industrial Valley* of purchaser's contemporaneous arrangements with the insiders of a debtor whose assets are purchased are helpful to show the scrutiny that such deals should receive, but they are not directly on point.

In this case, the question is whether the insider deal or sweetheart deal constitutes such a breach of the insider's fiduciary duty to creditors that the insider should be required to disgorge the benefits he obtained to the estate for the benefit of his creditors. This question is complicated by the fact, as mentioned earlier, that the sale of the debtor's assets was approved and is not subject to challenge, and the sales price must be deemed to have been within the fair and reasonable range. The Court is also reluctant to completely invalidate or bar a non-competition agreement within the context of a sale of a debtor company's assets because, if such agreements are commonplace in non-bankruptcy acquisitions, such a holding could have a chilling

effect on entities which might otherwise bid to purchase a debtor's assets.

With these considerations in mind and without direct evidence of wrongdoing on the part of Ross or Lancaster, the Court previously held, in Orders denying both defendants' motions for summary judgment, that the key question in this proceeding is whether there were valid business reasons for Lancaster's offer of compensation to Ross. This is the deciding factor because only if the arrangement was so lacking in value to Lancaster, when compared to the consideration paid to Ross, could the Court imply wrongdoing on the part of the defendants.

The Committee argues that, because Ross failed to render any true services in return for the consulting payments, the payments must have been given without a valid business reason. The Court disagrees. As stated in the Order of March 12, 1987, which denied Ross' motion for summary judgment, the arrangement between Ross and Lancaster should not be examined with the benefit of hindsight, but rather, should be considered in light of the facts known to the parties at the time. In this regard, the Court is of the opinion that the promises by Ross, an educated businessman, to make himself available for consulting and to refrain from competition were not illusory even if hindsight shows that Lancaster did not avail itself of the opportunity to call upon Ross for the consulting services. Thus, the Court is unable to conclude that the arrangement between Ross and Lancaster was entered into for an improper purpose.

However, there is one other factual circumstance of this case which might indicate a breach of duty by Ross. It appears to the Court that a debtor's creditors should be entitled to notice of an arrangement benefiting an insider which is entered into contemporaneously with the sale of the debtor's assets. In fact, in a case in which there was no disclosure of the existence of a deal between an insider and a purchaser, the Court might well imply wrongdoing on the part of either or both parties and hold either or both liable to the estate for the turnover of the amounts involved in the undisclosed arrangement.

In this proceeding, it appears that the Court and the Committee were informed at the time of the hearing relating to the sale that a deal was being negotiated with Ross but were not informed of the details. Under the circumstances of this case, the Court is of the opinion that the failure to disclose the particulars of the compensation package does not constitute a breach of duty sufficient to warrant the disgorgement of the compensation. First, the evidence does not clearly show that the details of the compensation package were finalized prior to the sale of the assets. While there may have been a meeting of the minds as to some aspects of Ross' arrangement prior to the sale, it is clear that the agreement to compensate Ross was not formalized until after the sale. This fact indicates not only that disclosure of the deal was sufficient, but also tends to show that there was no wrongful purpose on the part of Lancaster or Ross in making their deal since, after the sale was approved, Lancaster would have no justification other than valid business reasons to execute the formal compensation agreement with Ross. The fact that Lancaster's previous offers included compensation packages to Ross further indicates to the Court that creditors had been put on sufficient notice of the terms of Lancaster's negotiations with Ross so that the failure to disclose any agreed-upon details of the final arrangement did not constitute a breach of duty.

Finally, with regard to the plaintiff's allegations of preferences and unauthorized post-petition transfers received by Ross, the Court finds that the plaintiff did not adequately prove a right to recovery of such funds at trial.

Accordingly, it is ORDERED that judgment in the above-referenced adversary proceeding be entered in favor of the defendants, and that the plaintiff's post-trial motion for a verdict in its favor be DENIED.

IT IS SO ORDERED.