In re Gary A. LEVINE, Debtor.

In re Marcee D. LEVINE, Debtor.

H. Christopher CLARK,
Trustee, Plaintiff,

v.

Marcee D. LEVINE; Gary A. Levine; Zimmerman & Schwartz, P.C.; David Schwartz, Esq.; Steven L. Zimmerman, Esq.; Tommy M. Brown, Esq.; William C. Schlapman, P.C.; William Schlapman; Shari Schlapman; Vivian Schwartz; Ben Krug; and The Sofa Gallery, Inc., Defendants.

Bankruptcy Nos. 86–B–09068–C,
87–B–01302–E.
Adv. No. 88–A–0900.

United States Bankruptcy Court,
D. Colorado.

May 5, 1989.

**538**

Nancy Miller, Denver, Colo., for debtor.

Paul Quinn, Denver, Colo., for trustee.

Joanne Speirs, Denver, Colo., for U.S. Trustee.

Steve Hopkins, Denver, Colo., for Zimmerman & Schwartz, P.C.

## MEMORANDUM AND ORDER ON DEFENDANT ZIMMERMAN & SCHWARTZ, P.C.'S MOTION TO DISMISS

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Defendant Zimmerman & Schwartz, P.C.'s ("Z & S" herein) Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss, the Plaintiff/Trustee's Brief and Motion in Opposition to Defendant's Motion to Dismiss, and Z & S' Reply Brief in Support of Motion to Dismiss.

The facts, history, events, transactions, and allegations in this case are far too extensive, elaborate and complex to recite here. The background facts most pertinent, which are admitted facts or facts gleaned from the record, and on which the Court relies in ruling on the Defendant's Motion to Dismiss, are as follows:

1. In Adversary Proceeding 88–A–0900, Plaintiff/Trustee ("Trustee" herein) is seeking to recover funds and other assets alleged to have been fraudulently concealed from the individual bankruptcy estates and from creditors of Debtors/Defendants Gary A. and Marcee D. Levine ("Levines" or "Debtors" herein), by the Levines, Z & S, and other Defendants. Trustee also seeks recovery of the funds and assets allegedly wrongfully taken from The Sofa Gallery, Inc. ("Sofa Gallery" herein), a Colorado corporation wholly owned by the Levines, prior to the filing of the two bankruptcy cases. The recovery is sought for the benefit of the Levines' estates and, naturally, the creditors of those two estates.

2. All the common stock of Sofa Gallery was owned by the Levines and is an asset of the Debtors' estates pursuant to 11 U.S.C. § 541. Sofa Gallery is not a debtor in bankruptcy.

3. The Sofa Gallery was doing business as Levines Home Furnishings and was a furniture business which operated in the State of Colorado for a number of years prior to 1986. Gary Levine was president, director, shareholder and employee and Marcee Levine was also an officer, director, shareholder and employee of Sofa Gallery.

4. Defendants Z & S and its senior partner, David Schwartz, represented the Levines and/or Sofa Gallery during the period of time from approximately June, 1985 through approximately April, 1988.

5. Creditor claims in the approximate amount of $1,857,855.57 were scheduled in the bankruptcy estate of Marcee Levine, and creditor claims in the approximate amount of $2,483,830.80 were scheduled in the bankruptcy estate of Gary Levine. There is substantial duplication, or overlap, of these creditor claims. The Claims Registers and the Schedules filed by the Levines list their individual personal debt, as well as substantial debt attributable to Sofa Gallery.

6. The Trustee has set forth eight claims for relief in this Adversary Proceeding generally described as follows:

First Claim: Civil conspiracy, including bankruptcy fraud.

Second Claim: Fraudulent transfers pursuant to 11 U.S.C. § 544 *et seq.*

Third Claim: Turnover of assets pursuant to 11 U.S.C. § 542.

Fourth Claim: Breach of fiduciary duty owed by the Defendants to the corporation, Sofa Gallery.

Fifth Claim: Civil conversion and civil theft pursuant to C.R.S. § 18–4–405.

Sixth Claim: Turnover of attorney's fees pursuant to 11 U.S.C. § 329.

Seventh Claim: Negligent misrepresentation to Trustee and creditors.

Eighth Claim: Revocation of Debtors' discharges pursuant to 11 U.S.C. § 727.

7. In the Motion to Dismiss, Defendant Z & S contests: (a) Trustee's standing to assert claims of Sofa Gallery, and (b) jurisdiction of the Bankruptcy Court to hear and/or decide Trustee's First, Fourth, Fifth and Seventh Claims for Relief.

## CONCLUSIONS AND OPINION

The Trustee's argument is, essentially, that prior to and, significantly, during the respective Chapter 7 bankruptcy cases of the Levines, there was an elaborate and effective pattern of bankruptcy misconduct, illegal acts, and wrongful concealment of assets by the Defendants designed to deprive the bankruptcy estates and creditors of their claims and rights. The Trustee asserts, *inter alia,* a right to have the facts determined at trial in the Bankruptcy Court and to obtain recovery of alleged fraudulently concealed and/or fraudulently acquired assets of the Debtors, of the Debtors' estates, and of Sofa Gallery. Trustee also seeks recovery of attorney's fees from Z & S.

## I. THE COURT CONCLUDES AND FINDS THAT THE TRUSTEE HAS STANDING TO BRING CLAIMS ON BEHALF OF SOFA GALLERY.

Z & S first argues that the Trustee does not have standing to bring claims of, or on behalf of, Sofa Gallery. This Court disagrees.

Trustee has alleged sufficient facts and the applicable law is sufficiently broad, particularly in the context of a bankruptcy case, that the Trustee may here assert the claims of Sofa Gallery against the Defendants. The Trustee may well not prevail on the merits of Sofa Gallery's claims, but he has the right under the circumstances to proceed to assert them nonetheless.

■ Two principal reasons support this conclusion. First, the theory and pleading of business alter ego supports standing of the Trustee sufficient to withstand a Motion to Dismiss. Second, the complete and unqualified assignment of all right, title, claims and causes of action by the Levines and by Sofa Gallery to the Trustee supports standing. There are other reasons, as well.[1]

First, Trustee adequately pled the elements of an alter ego business relationship between the Levines and Sofa Gallery. *See, In Matter of Gulfco Investment Corp.,* 593 F.2d 921 (10th Cir.1979); *GM Leasing Corp. v. U.S.,* 514 F.2d 935 (10th Cir.1975).

Use of an alter-ego theory in "reverse" as Defendant calls it, is admittedly unconventional. Still, the Debtors' Trustee owns all the Debtors' property, rights, claims and assets under 11 U.S.C. § 541(a) and the property, rights and claims of a business alter-ego might well be deemed property of its principals, here, the Levines. Thus, Sofa Gallery's property, rights and claims might be deemed those of the Levines and, as a consequence of the Chapter 7 cases, the property, rights and claims may now be deemed those of the Trustee's.

It is well established that property of the Debtor in the possession, custody or control of its alter-ego comprises property of the estate at the commencement of the case. *In re F & C Services, Inc.,* 44 B.R. 863, 868 (Bankr.S.D.Fla.1984).

There is really little question that an alter ego claim of a debtor corporation can be brought by the debtor's trustee in bankruptcy; it is principally the basis on which, or the theory by which, it may be brought that causes debate. *Steyr–Daimler–Puch of America Corp. v. Pappas,* 852 F.2d 132,

---

**1.** The claims of the Levines as sole shareholders of Sofa Gallery and available rights and causes of action in the nature of a derivative shareholders' action might also, as argued by Trustee, serve as an additional, independent basis of Trustee's standing, but this Court is not relying on that position. *See, In re All American of Ashburn, Inc.,* 805 F.2d 1515, 1518 (11th Cir. 1986).

135 (4th Cir.1988).[2] In *Steyr–Daimler–Puch,* the Fourth Circuit Court of Appeals, after a careful analysis of alter ego theories, concluded that a debtor's Chapter 7 trustee was entitled to (1) assert the debtor's alter ego claims as a Section 541(a)(1) asset "because the corporation and the alter ego are 'one and the same'" and (2) the trustee's assertion of these claims, effectively on behalf of all creditors, precludes individual creditors from asserting same. *Id.* at 135.

The Tenth Circuit Court of Appeals has long recognized that, as a court of equity, the Bankruptcy Court has an obligation, indeed a duty, to disregard the fiction of separate legal entities "when the ends of justice so require." *In re Eufaula Enterprises, Inc.,* 565 F.2d 1157, 1162 (10th Cir. 1977).

> When one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding. *Forbush Co. v. Bartley,* 78 F.2d 805 (10th Cir. 1935).

*Id.,* at 1161.

*If* the alter-ego theory prevails, Sofa Gallery's claims against Z & S for both pre-petition and, significantly, post-petition conduct, are those of its principals, the Levines. The Trustee would accede to those claims of the Levines under Section 541(a)(1). *In re F & C Services, Inc., supra.*

That element, coupled with the rather broad sweep of jurisdiction granted to the Bankruptcy Court in 28 U.S.C. § 157(b) (see discussion, *infra* ), coupled still further with the unique and over-arching role of a trustee to thwart possible wrongful disposition or concealment of estate assets (pre-petition and post-petition) compels a conclusion that the Trustee may, at least, assert Sofa Gallery's claims against these Defendants. *See, Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Arnold Print Works,* 815 F.2d 165 (1st Cir.1987).

■ Second, the assignment of all of the Levines' and all of the Sofa Gallery's rights, titles, claims, interests, and causes of action to the Trustee in paragraph four of the Stipulation for Settlement in a companion proceeding, Adversary Proceeding 88–C–902, *is a second, independent, but also reinforcing, basis* on which to accord to the Trustee standing to bring claims of Sofa Gallery against Z & S.

After that assignment of rights, claims and causes of action, Z & S requested and was accorded the right to file a Supplemental Reply Brief which focuses on the "standing" issue. Z & S argues at length, in paragraphs A and B of its Reply Brief, that the assignment of claims by the Levines and by Sofa Gallery does not confer, reinforce or enhance, the standing of the Trustee to assert claims of the Levines or Sofa Gallery. The Court disagrees.

This Court believes that Defendant's argument is misplaced, primarily because (1) of all the primary cases cited and relied on by Z & S, they are distinguishable on their facts and only one was decided under the Bankruptcy Code; virtually all others were decided between 1925 and 1975 under the predecessor Bankruptcy Act, and (2) the one principal case decided under the Code, *In re D.H. Overmyer Telecasting Co., Inc.,* 56 B.R. 657 (Bankr.N.D.Ohio 1986), is distinguishable and fundamentally inapposite.

---

**2.** "The courts that have confronted the issue whether an alter ego claim can be brought by the trustee have accordingly looked to the nature of that claim under state law. One found that since, under state law, a corporation could bring an alter ego claim against its principals, the claim is a right of the debtor that passes into the bankruptcy estate and to the trustee. [Citations omitted.] Others have found that the claim may be asserted by the trustee in his other capacity, as representative of creditors. They find that an alter ego claim is available to all creditors and that the trustee has the power under section 544 to bring such a general claim on behalf of all creditors. [Citations omitted.] One court has indicated that the trustee may bring an alter ego claim under either power. [Citations omitted.]" *Steyr–Daimler–Puch of America Corp. v. Pappas, supra* at 135.

In *Overmyer,* a Chapter 11 and not a Chapter 7 case, the debtor-in-possession, not a trustee,[3] charged the *attorneys employed by the unsecured creditors' committee in a predecessor Chapter XI case with wrongdoing.* The alleged wrongdoing of the committee's attorneys was that they, committee counsel, "misled" and "deceived" the committee and "deliberately concealed" information from the committee members. The court, quite correctly, recognized the "claim as one belonging to the creditors and the creditors' committee," not one belonging to the debtor. *Overmyer, supra* at 659. In *Overmyer,* the attorneys accused of wrongdoing were the attorneys for the creditors' committee, were connected to a specific class of creditors, and were directly responsible for the rights, claims and interests of that specific class of creditors. In the Levines' cases, by sharp contrast, the attorneys, Z & S, were connected to the Debtors and directly responsible for the rights, claims, interests, and assets of the Debtors, Debtors' property, and Debtors' estates.

The crucial elements in *Overmyer* used in deciding if the bankruptcy trustee or the creditors had rights and a cause of action against alleged third-party wrongdoers (creditors' committee counsel) were (a) the connection between the parties, (b) the roles and responsibility of the respective parties, and (c) the nature and impact of the alleged wrongful conduct. Those elements are quite different in the *Overmyer* and in the Levines' cases.

*Overmyer* is "controlled" by *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed. 2d 195 (1972) as pointed out by Judge Ray in *Overmyer* and by Z & S' attorney. *Caplin* is also, however, not on point with this case.

In *Caplin,* the Chapter X trustee, under the Bankruptcy Act, was precluded from suing an "indenture trustee of certain debentures for failing ..." to act in a manner designed to prevent misrepresentations by the debtor and thus avoid injury to the creditors. The party, a fiduciary, accused of wrongdoing in *Caplin* represented a specific class of creditors.

In *Overmyer* and *Caplin* the connection, role and responsibility, as well as the nature and impact, of the alleged wrongdoing went essentially and primarily, from the representative of a specific creditor group (*Caplin,* indenture trustee; *Overmyer,* creditors' committee counsel) to the specific creditor's group (*Caplin,* debenture holders; *Overmyer,* unsecured creditors). The courts, in *Overmyer* and *Caplin,* accorded to the specific creditor class involved, primary and direct rights of action against the alleged third-party wrongdoer (committee counsel and indenture trustee) who was a fiduciary and who was specifically charged with representing that creditor class. The rights, claims and causes of action of the specific creditor class were not allowed to be exercised by the bankruptcy trustee. The court in *Overmyer* described the connection and responsibility of the proposed defendants in *Caplin* and *Overmyer* as follows:

> Like the indenture trustee [in *Caplin* ], FHF [Creditors' Committee's counsel in *Overmyer* ] represented, through the committee, the interests of a *specific class of creditors.* Neither FHF nor the indenture trustee ... had a fiduciary duty to the debtor corporation as opposed to the creditors they represented and with whom they were in privity.

> *In re D.H. Overmyer Telecasting Co., Inc., supra* at 659–660.

In the Levines' cases, by contrast, Z & S, the alleged wrongdoer, represented the two companion debtors and their corporation. Z & S did not represent a specific creditor class. Z & S' role and responsibility was to the Debtors, Debtors' assets, and Debtors' estates, *not* to a specific creditor class. The impact of Z & S' alleged wrongful conduct was directly against the Debtors, Debtors' assets and Debtors' estates, not against a specific class of creditors or their respective rights or interests.

---

**3.** The court in *Overmyer* recognizes that the rights and powers of a Chapter 11 debtor-in-possession "are even more circumscribed than the trustee's" in Chapter 11 or 7 cases.

These distinctions between Defendant's principal case law, *Overmyer* and *Caplin*, and the Levines' situation, are particularly important where, as here, the *alleged wrongful misconduct* was pre-petition conduct which *continued through and after filing the Chapter 7 petitions and persisted throughout much of the post-petition case administration.*[4]

The Court concludes that the Trustee has standing to assert the claims of the Levines and Sofa Gallery against Z & S for Z & S' alleged pre and post-petition misconduct.

## II. THE COURT CONCLUDES THAT IT HAS JURISDICTION TO DETERMINE THE ISSUES RAISED BY THE TRUSTEE AS A CORE PROCEEDING.

■ This Court finds that:

(1) the second, third, sixth and eighth claims are so clearly and indisputably core matters pursuant to 28 U.S.C. § 157(b)(2) that no further discussion is needed;

(2) the four remaining claims, the first, fourth, fifth and seventh claims, the jurisdiction of which Defendant contests, are core matters pursuant to 28 U.S.C. § 157(b)(2); and

(3) Defendant's argument that the first, fourth, fifth and seventh claims are neither core nor "related to a case under title 11," is without merit.

The reasons for these findings are several. Briefly, they include the following.

First, the sweep of 28 U.S.C. §§ 1334 and 157(b)(2) in granting jurisdiction to the Bankruptcy Court is, by the plain meaning of the words used, rather broad. In pertinent part, core proceedings are defined at Section 157(b)(2) to include, *but are not limited to:*

(A) matters concerning the *administration* of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate . . .;

(C) counterclaims by the estate against persons filing claims against the estate . . .;

(E) orders to *turn over property* of the estate . . .;

(H) proceedings to *determine, avoid or recover fraudulent conveyances;*

(O) *other proceedings affecting the liquidation of the assets of the estate* or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. (Emphasis added.)

The Trustee's allegations, particularly those which embody, in whole or in part, *post-petition* conduct and *post-petition* misconduct by the Defendants in the nature of concealment, civil conspiracy, and misrepresentations, fall squarely within the ambit of subsections (2)(A), (H), and (O) of Section 157(b).

The history of Section 157 and the principal elements in determining what is "core" versus what is "non-core" was carefully analyzed, at length and in depth, by Judge Howard C. Buschman, III in *In re Lion Capital Group*, 46 B.R. 850 (Bankr.S.D.N.Y.1985). His first and principal conclusion was that:[5]

---

4. *Overmyer, Caplin,* and other similar cases which Defendants cite at Sections A and B, and footnotes 2 and 3 of their Brief, are distinguished by the above-referenced features and still other unique features of the Levines' cases. These other features include (1) the business alter-ego element pled in the Levines' cases, (2) the Levines' Trustee's exclusive right, title and interest, as sole shareholder of Sofa Gallery's common stock (i.e., Section 541 property of the estate), and (3) the Debtors', and hence the Trustee's, "standing to maintain [the claims] outside of bankruptcy court," by way of a derivative shareholders action, if not otherwise. *Overmyer, supra* at 661. The Court is satisfied that

more extensive and elaborate discussion is not justified or needed. Cases on which Z & S relies to deny the Trustee standing are simply too inapposite.

5. This Court finds *In re Lion Capital Group* to be instructive and useful here. Judge Buschman focuses on the central issue in defining the extent of bankruptcy court jurisdiction over core proceedings. He states: "From *Marathon* itself and from post *Marathon* cases . . . it is clear that, under the actual holding in *Marathon,* the constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of

Turning first, as we must in the exercise of interpretation, [citations omitted] to the statutory language of 28 U.S.C. § 157(b)(2), it is self-evident that Congress sought to define core proceedings by setting forth under that broad umbrella fifteen types of matters which fall thereunder but do not circumscribe its meaning; outer limits are left to be defined by the courts.

*In re Lion Capital Group, supra* at 854.

Second, while the first, fourth, fifth and seventh claims are, principally, founded on state law, a determination of whether claims are core or not "shall *not* be made solely on the basis that its resolution will be affected by state law." (Emphasis added.) 28 U.S.C. § 157(b)(3); *In re Nat'l Equipment & Mold Corp.*, 71 B.R. 24 (Bankr.N.D.Ohio 1986). This statutory language is, itself, not restrictive and narrow, but rather it is somewhat ambiguous, open to interpretation, and implies some breadth of discretion.

The case law reinforces that conclusion and there are persuasive appellate decisions which this Court adopts in support of that view. For example, the Second Circuit utilizes a test that provides if a civil action is state law based, but it is nonetheless "inextricably tied" to the bankruptcy estate, then jurisdiction will lie with the Bankruptcy Court. *In re Kaiser*, 722 F.2d 1574, 1581–1582 (2nd Cir.1983). *See, In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir.1986). Trustee's allegations, particularly the allegations of *post-petition* (a) conversion, (b) theft, (c) concealment of assets, (d) civil conspiracy, or (e) continuing misrepresentation of facts to the Trustee and creditors, are certainly premised on and affected by state law, but they are also, without doubt, "inextricably tied" to the bankruptcy estates. Indeed, in the Court's opinion, they are *more* than "inextricably tied" to the estates. The allegations go to the *heart* of the estates; the wrongful conduct alleged *is* the management and administration of the Levines' estates. Moreover, the allegations made

control by Article III courts and whether there is a nexus between the proceeding involving a

are more than "inextricably tied" to the assets of the estates. The allegations go to the *existence of and access to assets* of the Levines' estates. The Court concludes that the "inextricably tied" test, as a reasonable guide even if not controlling law, is more than satisfied.

Third, recent case law in this District supports a decision that the Bankruptcy Court has jurisdiction over the four contested claims as core proceedings. Two recent cases of the Honorable Roland J. Brumbaugh held that post-petition contracts, post-petition sales or disposition of estate assets, and collection of post-petition accounts receivable are core matters, thus granting jurisdiction to the Bankruptcy Court. *In re Telamarketing Communications*, 95 B.R. 794 (Bank.D.Colo.1989); *In re Associated Groceries of Colorado, Inc.*, 97 B.R. 39 (Bankr.D.Colo.1988, as amended 1989). Judge Brumbaugh relied, in part, on another recent decision which gave an expanded interpretation of Bankruptcy Court jurisdiction by the Honorable Patricia A. Clark in *In re Standard Metals Corporation*, 97 B.R. 593 (Bankr.D.Colo., 1988).

So too, Judge Charles E. Matheson has recently ruled that recovery of fraudulent transfers, even though premised on and decided by state law, are core proceedings nonetheless and jurisdiction is in the Bankruptcy Court. *In re Kaiser Steel Corp.*, 95 B.R. 782 (Bankr.D.Colo.1989).

Finally, Judge Richard P. Matsch recently decided that subject matter jurisdiction of the Bankruptcy Court, as a core proceeding, lies over issues concerning: (1) the role and conduct of third persons in managing, or being consulted about management of, a debtor's estate, and (2) transfers of creditor claims and transfers of debtor's assets which may or may not serve as collateral on creditor claims. Judge Matsch gave a relatively broad sweep to jurisdiction in these areas:

[B]ecause the debtor's rights, liabilities, options, or freedom of action may be affected and because there may be some

state law cause of action and the bankruptcy estate." *In re Lion Capital Group, supra* at 856.

impact on the administration of the estates.

*S.B.C. Investments, Ltd., D.D. Investments, Inc. v. U.S. Bankruptcy Court, The Honorable Sidney B. Brooks*, Civil Action No.'s 89–M–311 and 89–M–319 (D.Colo., April 4, 1989) (Van Schaack and Company, Van Schaack Residential Realty, Inc.). *See, In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

In *S.B.C. Investments, Ltd., supra,* Judge Matsch specifically accorded Section 157(b) "core" subject matter jurisdiction to the Bankruptcy Court over *post-petition* transactions essentially undertaken between two persons, or entities, which were only related to the debtor, and which transactions did not involve the debtor, directly.

Fourth, in opposing jurisdiction of the Bankruptcy Court, the Defendant Z & S principally relies on *Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229 (Bankr. Colo.1985). In *Zweygardt, supra* at 231–232, Judge Gueck recited in his 1985 opinion that "[t]here is a dearth of authority or language ... in determining when a proceeding arises under Title 11" and "it is equally unclear" as to what "arising in" means. That observation of Judge Gueck's was correct, given the then very recently implemented Bankruptcy Amendments and Federal Judgeship Act of 1984, correcting the jurisdictional deficiencies revealed in *Northern Pipeline Construction Co. v. Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Now, however, the case law is rather more plentiful and instructive. It provides somewhat more guidance in according jurisdiction to Bankruptcy Courts. Moreover, *Zweygardt* is very much and easily distinguishable from this case. The claims in *Zweygardt* involved, exclusively, the debtor's pre-petition claims against a creditor. In this Levine adversary proceeding we are dealing with allegations predominantly concerning conduct which continued post-petition and persisted through much of the bankruptcy cases' administration. Further, the litigation claims in *Zweygardt* were *"totally independent"* of the bankruptcy case and originally filed by the debtor in state court and then removed to Bankruptcy Court. That is quite different from the within case. *Zweygardt* is simply not on point and certainly not controlling.

Fifth, the Bankruptcy Court has jurisdiction to scrutinize and evaluate transactions between and transfers undertaken among insiders. The Court has the ability to review such transactions, whether they are conducted fairly and at "arms-length," or are "sweetheart deals," or are fraudulent under state law. Again, recent case law, in addition to *S.B.C. Investments, Ltd., supra,* supports that position. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3rd Cir.1986); *Matter of Specialty Products, Inc.,* 94 B.R. 781 (Bankr.N.D.Ga. 1989); *In re Indus. Valley Refrig. & Air Cond. Supplies,* 77 B.R. 15 (Bankr.E.D.Pa. 1987).

This right to scrutinize transactions between and transfers undertaken among insiders is especially clear and important where attorneys and accountants, professionals, are involved.

Sixth, the Bankruptcy Court has specific and express jurisdiction over those professionals *employed* by a bankruptcy debtor and/or those who appear in bankruptcy cases. This is particularly true for general counsel hired by the debtor and other professionals employed by a debtor. *See,* 11 U.S.C. §§ 328–331 [6]; *In re Walters,* 868 F.2d 665, 668 (4th Cir.1989). It is alleged and largely admitted that Z & S and David Schwartz voluntarily represented the Debtors, prepared documents for and advised Debtors regarding their prospective bankruptcies, were employed generally as counsel for the Debtors for relevant purposes

---

**6.** For example, see 11 U.S.C. § 329: "**Debtor's transactions with attorneys.** (a) Any attorney *representing a debtor* in a case under this title, *or in connection with such a case,* whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, *for services rendered or to be rendered in contemplation of or in connection with the case* by such attorney, and the course of such compensation." (Emphasis added.) 11 U.S.C. § 329(a).

of bankruptcy planning, preparation and post-petition proceedings, and served and appeared as counsel for Debtors in various post-petition events and hearings. The Court is entitled, indeed it is obligated, to exercise its jurisdiction over Debtors' counsel under such circumstances.

Finally, the Court considers the Z & S argument that the four contested claims of the Trustee (First, Fourth, Fifth and Seventh Claims) are not even "related to" a case under Title 11 pursuant to 28 U.S.C. § 157(a) and (c)(1), and thus not at all subject to Bankruptcy Court jurisdiction, to be without any merit whatsoever. For the reasons cited above and because, *at a minimum,* the claims have "a reasonable nexus to the bankruptcy case," the first, fourth, fifth and seventh claims for relief are viewed by this Court as *nothing less* than "related to" the Levines' Chapter 7 cases. *In re Blehm Land & Cattle Co.,* 38 B.R. 648, 652 (Bankr.D.Colo.1984). Because the conduct alleged and the claims made are, at the very least, "integral to the administration of the bankruptcy estate" they are "related to" the case and jurisdiction lies with the Bankruptcy Court. *Matter of Colorado Energy, Inc.,* 728 F.2d 1283 (10th Cir.1984).

IT IS THEREFORE ORDERED that Defendant Zimmerman & Schwartz, P.C.'s Motion to Dismiss is DENIED.