**In re Louis McCRAY, Debtor.**

**AMW CABLE COMPANY, INC., Plaintiff,**

**v.**

**Louis McCRAY and Jeffrey Levingston, Chapter 7 Panel Trustee, Defendants.**

Bankruptcy No. 94–12335.
Adversary No. 96–1252.

United States Bankruptcy Court,
N.D. Mississippi.

April 10, 1997.

411

Charles Victor McTeer, McTeer and Associates, Greenville, MS, for Louis McCray.

William M. Bass, Denver, CO, Paul Mathis, Lake Tindall, L.L.P., Greenville, MS, for AMW Cable Co., Inc.

Jeffrey Levingston, Cleveland, MS, Chapter 7 Trustee.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for summary judgment filed by the plaintiff, AMW Cable Company, Inc., (AMW); as well as, a motion for abstention filed by the defendants, Louis McCray (debtor or McCray) and Jeffrey Levingston, Chapter 7 panel trustee; appropriate responses having been filed to both motions; and the court having heard and considered same hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). This is a related or non-core proceeding as contemplated by 28 U.S.C. § 157(b)(3).

II.

AMW was incorporated under the laws of the State of Mississippi in September, 1987. It subsequently was qualified to do business in the State of Colorado. In December, 1989, AMW borrowed the sum of $1,000,-000.00 from First Interstate National Bank, Denver, Colorado. This loan, which was secured by all of AMW's assets, was personally guaranteed by two of its shareholders, Robert D. Gross and his wife, Judith Ann Carroll. On December 8, 1992, First Interstate National Bank advised AMW that the loan was in default and demanded payment. Shortly thereafter, or December 31, 1992, AMW filed a voluntary Chapter 11 petition for reorganization in the Bankruptcy Court for the District of Colorado.

Pursuant to an order of the Colorado bankruptcy court, Gross, Carroll, and a related company, Winslow Communications, Inc., purchased the First Interstate National Bank promissory note and related security instruments for the sum of $525,000.00. This transaction was financed primarily from a loan obtained from Colorado National Bank in the sum of $350,000.00, as well as, two refinanced promissory notes executed in favor of First Interstate National Bank. The security interests which were originally conveyed to First Interstate National Bank were pledged to Colorado National Bank as collateral for the new loan.

AMW's confirmed plan of reorganization apparently contained a provision to the effect that the assets of AMW could be conveyed to Gross, Carroll, or Winslow Communications since they had purchased the original loan obtained from First Interstate National Bank. AMW ultimately defaulted on its obligations to Colorado National Bank and/or First Interstate National Bank, and on June 28, 1994, Gross had the assets of AMW transferred to Winslow Communications, ostensibly relying upon the confirmed plan.

In October, 1996, Gross negotiated the sale of an AMW cable franchise for the Town of Metcalf, Mississippi, through Winslow Communications to Telecable Associates, Inc., for the purchase price of $209,000.00. The proceeds were purportedly to be paid over to either Colorado National Bank or First Interstate National Bank. However, before this transaction could be consummated, McCray and several other AMW shareholders filed a lawsuit in the Chancery Court of Washington County, Mississippi, seeking to enjoin Gross from using the sales proceeds to pay the two banks. McCray and the other shareholders asserted that they were entitled to their pro rata share of the proceeds. AMW, through its present attorney of record, entered an appearance and consented to the chancery court's jurisdiction. Coincidentally, an injunction was issued by the chancery court, pursuant to an agreement reached by all of the parties, to the effect that the sale of the cable franchise would be approved, and the proceeds were to be "escrowed" pending a hearing on the merits of the complaint in the chancery court. Extensive discovery was completed, and the matter was thereafter litigated. A decision, however, has not yet been rendered by the chancellor. The claims and the respective positions of the parties are identical to the ones that are asserted in this court. In addition to the fact that the issues have been tried in a state court of competent jurisdiction, this court would make the following observations:

1. The proceeding which was filed in the Chancery Court of Washington County was never timely removed to this court pursuant to Rule 9027, Federal Rules of Bankruptcy Procedure.

2. The chancery court is competent to adjudicate the effect of the orders that were entered in the bankruptcy case filed by AMW in the Colorado bankruptcy court.

3. The Colorado bankruptcy court is a more appropriate forum to determine the efficacy of its own orders as opposed to this court, which has jurisdiction only of a shareholder's individual bankruptcy case.

## III.

This court's jurisdictional authority is essentially derived from 28 U.S.C. § 1334. For reference purposes, § 1334(a) and (b) are set forth as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a), (b).

An examination of the § 1334(b) exception to the district courts' original and exclusive jurisdiction reveals that it is, in fact, a three part exception. It provides that the district courts shall have original, *but not exclusive jurisdiction,* of the following types of "civil proceedings": (1) those arising under Title 11, (2) those arising in a case under Title 11, and (3) those related to a case under Title 11. The Fifth Circuit in *Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir.1987), stated that distinguishing the separate provisions of § 1334(b) is not necessary when determining the scope of bankruptcy jurisdiction, but that "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." This court, however, is of the opinion that the facts of this proceeding warrant an examination of each of the three components of § 1334(b).

## IV.

### *Arising Under Title 11*

The legislative history of the Bankruptcy Code provides that the term "arising under" is well defined:

> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. § 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

1 *Collier on Bankruptcy* ¶ 3.01[4][c][i] (15th ed. rev.1996).

■ Essentially, when a cause of action is created by the Bankruptcy Code, then that proceeding is one which "arises under" Title 11. *Collier on Bankruptcy, Id.* The meaning of "arising under" was further explained in the Senate debate preceding enactment of the 1984 amendments to the Bankruptcy Code;

> How and when a case arises "under the ... laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the limits of federal question jurisdiction, a right or immunity created by the ... laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the ... laws of the United States are given one construction or effect, and defeated if they receive another....
> A genuine and present controversy, not merely a possible or conjectural, must exist with a reference thereto.... (*Gully v. First National Bank*, 299 U.S. 109, [113] 133[, 57 S.Ct. 96, 97–98, 81 L.Ed. 70] (1936)).

1 *Collier on Bankruptcy* ¶ 3.01 [4][c][i] (15th ed. rev.1996). (citing 130 Cong. Rec. § 6089 (Daily Ed. May 21, 1984)).

■ In the matter presently before this court, the plaintiff, AMW, seeks a declaratory judgment adjudicating that it is entitled to the proceeds realized from the sale of the cable franchise for the Town of Metcalf. AMW is a former debtor in a Colorado bankruptcy case. The debtor herein, Louis McCray, is one of several shareholders of AMW, who contends that he is entitled to a pro rata distribution of the sales proceeds. McCray and the other shareholders have also asserted that Gross perpetrated the common law torts of fraud, misrepresentation, usurpation of corporate opportunity, etc. None of these alleged causes of action arise under the Bankruptcy Code.

## V.

### *Proceedings "Arising in" Title 11 Cases*

The Fifth Circuit in *In re Wood* examined the meaning of "arising in ... cases under Title 11," and stated as follows:

> The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. (citation omitted) In other words, "arising in" proceedings are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Matter of Wood,* 825 F.2d 90 at 97 (emphasis in original).

■ Clearly, the proceeding before this court is one which can be litigated elsewhere. The trial has even been concluded in the Chancery Court of Washington County. As such, this court concludes that this is not a proceeding which "arises in" the debtor's bankruptcy case.

## VI.

### *Related to Cases Under Title 11*

■ Although the term "related to" is not defined in the Bankruptcy Code, the Fifth Circuit has adopted a definition first articu-

lated by the Third Circuit. A proceeding is "related to" a Title 11 case "if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). The Fifth Circuit has had recent occasion to clarify the definition of "related to" as follows:

> [A]n action is related to bankruptcy if the outcome could alter the debtors' rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the administration of the bankrupt estate.

*Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 752 (5th Cir.1995) (citing *In re Walker*, 51 F.3d at 569 (quoting *Pacor, Inc.*, 743 F.2d at 994)).

 If the debtor prevails in this litigation, the bankruptcy estate would be enhanced by his pro rata share of the sales proceeds realized from the sale of the Town of Metcalf cable franchise. As such, the court is compelled to conclude that this is a related or non-core proceeding.

### VII.

The theories of permissive or discretionary abstention, as well as, mandatory abstention are found respectively in 28 U.S.C. § 1334(c)(1) and § 1334(c)(2).

In keeping with the dictates of the statute, discretionary or permissive abstention should be invoked in the interest of justice, in the interest of comity with state courts, or with respect for state law. Since the issues in this adversary proceeding have already been fully litigated in the chancery court, discretionary or permissive abstention obviously applies.

Mandatory abstention, pursuant to § 1334(c)(2), should be invoked when the following conditions are present:

1. A motion has been timely filed requesting abstention.

2. The cause of action is essentially one that is premised on state law.

3. The proceeding is non-core or related to the bankruptcy case.

4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.

5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

There is little dispute that each of the above conditions, required for mandatory abstention, is present in this proceeding. As such, the court is of the opinion that the motion to abstain is well taken, and it will be granted. Likewise, AMW's motion for summary judgment is not well taken, and it will be overruled.

An order will be entered consistent with this opinion.