### In re SYSTEMS ENGINEERING & ENERGY MANAGEMENT ASSOCIATES, INC., Debtor.

### Richard W. Hudgins, Chapter 7 Trustee, Plaintiff,

### v.

### Mahesh B. Shah, Bharti M. Shah, Milap M. Shah, Seema M. Shah, Defendants.

**Bankruptcy No. 99–41937–S.**

**Adversary No. 00–04008–S.**

United States Bankruptcy Court, E.D. Virginia. Newport News Division.

July 19, 2000.

Peter G. Zemanian, Norfolk, VA, for Plaintiff Richard W. Hudgins, trustee.

Dion W. Hayes, Newport News, VA, for Defendants Bharti M. Shah, Milap M. Shah and Seema M. Shah.

Michael A. Condyles, Richmond, VA, for Defendant Mahesh B. Shah.

## Memorandum Opinion and Order

STEVEN C. ST. JOHN, Bankruptcy Judge.

■ This matter comes before the Court for determination whether the above-captioned adversary proceeding is, in whole or in part, a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). Bankruptcy courts have only the jurisdiction and powers that Congress has granted expressly or by necessary implication. *See Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir.1990) (citing *Johnson v. First Nat'l Bank*, 719 F.2d 270, 273 (8th Cir.1983)). Congress has delineated the jurisdiction of the bankruptcy courts by distinguishing "core proceedings" from "non-core proceedings." The bankruptcy court may hear and determine and enter· dispositive orders and judgments in all core proceedings arising under or arising in a case under title 11 of the United States Code ("Bankruptcy Code"). *See* 28 U.S.C.A. § 157(b)(1) (West 2000). In contrast, while the bankruptcy court may hear a proceeding that is non-core, but is otherwise "related to" a case under the Bankruptcy Code, in such a proceeding, the bankruptcy court shall submit proposed findings of fact and conclusions of law to the district court. The district court shall enter a final order or judgment only after a de novo review of any proposed finding to which a party has timely and specifically objected. *See id.* § 157(b)(1). Pursuant to 28 U.S.C. § 157(b)(3), the bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding as defined by 28 U.S.C. § 157(b)(2)[1] or whether a pro-

1. 28 U.S.C. § 157(b)(2) provides a non-exclusive list of core proceedings as follows:

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemption from property of the estate, and estimation of claims

or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

ceeding is otherwise related to a case under the Bankruptcy Code.

On July 30, 1999, an involuntary petition was filed against the Debtor, initiating the instant case. The Court entered an order for relief on September 30, 1999. Richard W. Hudgins, the duly-appointed Chapter 7 Trustee ("Trustee") for the Debtor, Systems Engineering and Energy Management Associates, Inc., filed the instant Complaint on March 20, 2000. The Complaint consists of seven separate counts. On April 21, 2000, three of the Defendants, Bharti M. Shah ("Bharti"), Milap M. Shah ("Milap"), and Seema M. Shah ("Seema"), through counsel, filed a Motion to Dismiss Counts Three and Five of the Complaint. On the same date, the remaining Defendant, Mahesh B. Shah ("Mahesh"), through counsel, filed an Answer to all counts of the Trustee's Complaint.

All of the Defendants assert, in their respective pleadings, that this is a "noncore" proceeding and object to this Court entering final orders or judgments in the adversary proceeding. On the basis of the Defendants' timely objections, raised in their responsive pleadings, the Court is compelled to make a determination, pursuant to 28 U.S.C. § 157(b)(3), as to whether this proceeding is a core proceeding.

The Court has examined the parties' conflicting positions regarding this Court's jurisdiction, as outlined in the pleadings filed in connection with the adversary proceeding and as articulated at the hearing on the Motion to Dismiss. After such consideration, the Court makes the following conclusions of law and determination regarding whether this is a core proceeding.

Allegations of the Complaint

The Trustee's Complaint seeks judgment against and recovery from the Defendants, who are related to one another. The Complaint's extensive allegations are as follows:

At some time prior to May 1997, a commercial construction contractor, E.G. & G., Inc. ("E.G. & G."), approached the Debtor with a proposal to work jointly on a contract for work at the George C. Marshall Space Flight Center in Huntsville, Alabama ("Alabama Contract"). On May 9, 1997, an affiliate of E.G. & G. entered into a teaming agreement with the Debtor. The teaming agreement contemplated a certain minimum and maximum income for performance of the Alabama Contract, of which the Debtor would receive fifteen percent (15%). The Alabama Contract was awarded to E.G. & G on or before October 1997.

Despite the Debtor's ability to perform a portion of the work under the Alabama Contract, the Debtor chose to perform under the Alabama Contract through an affiliate, Seema Alabama, Inc. ("SAI"). The Debtor never assigned SAI the contract; despite that, however, the Debtor's employees worked on the Alabama Contract, the Debtor contributed substantial start-up costs and overhead to SAI to permit the Alabama Contract's performance, the

(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmation of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
28 U.S.C.A. § 157(b)(2) (West 2000).

Debtor and SAI treated the Alabama Contract as a joint asset and shared in many of the overhead costs of performance, and the Debtor regularly held itself out as the Alabama Contract's legal and beneficial owner and regularly received income from the Alabama Contract. Only after the involuntary petition was filed against the Debtor did SAI assert that it is the Alabama Contract's sole legal and beneficial owner.

SAI is an Alabama corporation, incorporated in 1997; Seema Shah owns all of SAI's outstanding stock. SAI failed to maintain corporate minute books nor other corporate formalities to maintain its separate existence and co-mingled its financial operations with the Debtor.

Another corporation, Real Estate Equity & Management Associates, Inc. ("REEMA") also co-mingled its financial affairs with the Debtor. REEMA owns an office/warehouse facility located in Hampton, Virginia that it leases to the Debtor. Bharti owns all of the outstanding shares of REEMA's stock. REEMA did not properly maintain its separate corporate existence and conducted its business affairs at the same location as the Debtor and shared employees as well as overhead and other expenses. REEMA also made a $125,000.00 loan to one of the Debtor's employees. REEMA sold the loan to the Debtor two years later for its face amount, despite the employee obligor having been convicted in a government contract kickback scheme in the interim and despite the loan being in default.

Finally, each of the Defendants received numerous monetary transfers from the Debtor to improperly pay personal expenses. Certain defendants were not the Debtor's employees at times when the Debtor made some of these payments.

Based upon these factual allegations, the Trustee seeks recovery under seven theories, constituting the Complaint's seven separate counts: (i) Mahesh, who was, at all times described in the Complaint, the Debtor's sole director and chief executive officer, engaged in a pattern of conduct to use the Debtor's assets for personal gain and to the detriment of the Debtor's creditors, causing waste of the Debtor's assets through his malfeasance, all of which constitutes a breach of Mahesh's fiduciary duties to the Debtor; (ii) the various transfers to Mahesh and other family members from the Debtor were distributions made in violation of § 13.1–653 of the Virginia Code, for which Mahesh is liable to repay as the Debtor's sole director and chief executive officer; (iii) as the Debtor's current or former employees and as insiders, Milap and Seema owed the Debtor and its creditors a duty of loyalty and fair dealing that they breached by their transfer of the Alabama Contract to SAI; (iv) all of the Defendants combined to deprive the Debtor and its creditors of valuable assets, which injured the Debtor's ability to conduct business and prevented the Debtor from paying its lawful debts, in violation of § 18.2–499(A) of the Virginia Code; (v) by disregarding corporate formalities, conducting their business affairs inseparably from the Debtor, commingling financial obligations and assets with the Debtor, and holding themselves as the Debtor's corporate "alter ego," both SAI and REEMA have forfeited the protections of the "corporate veil," exposing SAI's sole shareholder, Seema, and REEMA's sole shareholder, Bharti, to liability for the Debtor's obligations; (vi) the Trustee is entitled to recovery of the various cash transfers to all defendants as a fraudulent transfer of the Debtor's property pursuant to 11 U.S.C. § 548(a); and (vii) the Trustee seeks the subordination of any claims or liens that any of the defendants assert against the Debtor or its property pursuant to 11 U.S.C. § 510(c).

As to whether or not the Court has core jurisdiction, the Trustee asserts that "[t]his Complaint seeks … (i) entry of judgment against some or all of the Shah Defendants, (ii) the disallowance or subordination of claims that may be asserted by the Shah Defendants, (iii) the avoidance

and recovery of certain fraudulent conveyances, and (iv) the turnover of estate property based on a piercing of the 'corporate veil' of two affiliated corporations which 'gives rise to a "core proceeding"' within the meaning of 28 U.S.C. § 157(b)(2)(B), (E), (H) and (O)." (Compl. at ¶ 3.)

### Conclusions of Law

As Judge Murnaghan of the Fourth Circuit Court of Appeals has noted, "[t]he distinction between what is 'core' and what is 'non-core' is far from clear." *Apex Express*, 190 F.3d 624, 630 (4th Cir.1999). Congress specifically enacted § 157 in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case, the Supreme Court held, in a plurality opinion, that a bankruptcy court did not have jurisdiction to hear a pre-petition breach of contract claim that the debtor-in-possession had brought. The *Marathon* holding was based primarily on the premise that granting the bankruptcy court such jurisdiction allowed a non-article III court to adjudicate claims based on state-created private rights arising independent from and antecedent to the bankruptcy proceedings, and involving individuals that would not otherwise be party to the bankruptcy proceeding. *See Marathon*, 458 U.S. at 84, 102 S.Ct. 2858; *see also Apex Express*, 190 F.3d at 631 (construing *Marathon's* holding). Congress subsequently established 28 U.S.C. § 157 to try to remedy the defects in the bankruptcy system noted in *Marathon*. *See Apex Express*, 190 F.3d at 631.

The Fourth Circuit Court of Appeals has recently, in *Apex Express*, provided guidance as to how § 157 should be construed in determining whether a proceeding is core or non-core. In that case, a debtor sought from a third party for penalties the third party allegedly owed for late payment of freight charges under the Debtor's tariffs. The district court followed the bankruptcy court in holding that the collection proceeding initiated in the bankruptcy court was a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).

The Fourth Circuit Court of Appeals disagreed. As a general matter, the court outlined the breadth with which § 157 should be interpreted:

> On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core." *See, e.g.*, 28 U.S.C.A. § 157(b)(2)(A) ("matters concerning the administration of the estate"); § 157(b)(2)(O) ("other proceedings affecting liquidation of the assets of the estate"). But, the statute must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by *Northern Pipeline* [i.e. *Marathon*], and (2) that *Northern Pipeline* remains good law, even if perhaps narrowed by subsequent decisions (internal citation omitted).

*See Apex Express*, 190 F.3d at 631. After noting the split of various courts on whether "accounts receivable" claims against strangers to the bankruptcy proceeding are core or non-core, *see id.*, the court found several bases to conclude that such claims were non-core.

■ Looking first to the holding in *Marathon*, the court found that such claims fell squarely under *Marathon's* dictates in that "Congress may not force non-consenting claimants whose claims are based on state-created private rights into non-Article III courts." *Id.* at 632. The court also found fault with the logic courts use to find such contract claims are "core:"

> The main justification supplied by these courts is that because the accounts receivable are in some sense the property of the bankruptcy estate, and because the outcome of the claim will affect the bankruptcy estate (by altering its size), then the claims are "core" .... But, under this logic any claim including a potential money judgment would be considered core, even the precise contract

claim at issue in *Northern Pipeline.* Thus, the rationale used by these courts would swallow the rule established by *Northern Pipeline.*

*Id.* at 632 (internal citations omitted). Finally, the court looked to the public rights/private rights distinction, which it found was a key aspect of the *Marathon* decision:

> The Court in *Northern Pipeline* observed that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power" is a public right.... Because the public right nature of bankruptcy proceedings gives Congress the power to assign judicial functions to non-Article III bankruptcy courts, the core/non-core distinction should depend upon the connection the claim has to this public right. The type of dispute at issue only has some theoretical and indirect impact on the public act of debt restructuring. But, the dispute itself is entirely separate and entirely private—the contract-based liability between two private parties.... The resolution of the present private right dispute is hardly at the core of restructuring debtor-creditor relationships. To be faithful to Northern Pipeline, we must treat such a private rights dispute as a non-core matter.

*Id.* (internal citations omitted).

■ This Court previously has set forth a number of factors to review in this core/non-core determination. In *Seven Springs, Inc. v. Abramson (In re Seven Springs, Inc.)*, 148 B.R. 815 (Bankr. E.D.Va.1992), the Court, in concluding that the claim in question was not core, but was an otherwise related proceeding, examined the following factors:

> (1)[The claim] is not specifically identified as a core proceeding under [28 U.S.C.] § 157(b)(2)(B).
>
> (2) [The claim] existed prior to the filing of the bankruptcy case.
>
> (3) [The claim] would continue to exist independent of the provisions of Title 11, and
>
> (4) The parties' rights, obligations or both are not significantly affected as a result of the filing of the bankruptcy case.

*Id.* at 817 (citing *Marshall v. Michigan Dep't of Agriculture (In re Marshall)*, 118 B.R. 954, 963 (W.D.Mich.1990)). Other courts have articulated various distinguishing characteristics of "core proceedings;" critical to each appears to be the centrality of the proceedings to the bankruptcy case.[2] The state law origin of claims asserted in a proceeding is not dispositive, however, of whether a proceeding is core or related to a bankruptcy. *See* 28 U.S.C.A. § 157; *see also Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir.1999).

■ In the context of a multiple-count adversary proceeding, such as here, courts are split as to whether the core jurisdiction determination should be made as to the whole proceeding, or claim-by-claim. Some courts have held that "when a pro-

---

**2.** *See, e.g., Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987) ("'[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.''); *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons, Inc.)*, 149 B.R. 19, 23 (Bankr.E.D.N.Y.1992) ("Core proceedings include matters which were traditionally deemed inherently within the bankruptcy courts' jurisdiction.''); *Acolyte Elec. Corp. v. City of New York (In re Acolyte Elec. Corp.)*, 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986) ("To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement.''), *aff'd*, No. 86–0329(JBW), 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987). The mere characterization of an adversary proceeding as within the core terms of 28 U.S.C. §§ 147(b)(2)(A–O) is not dispositive whether a proceeding is core. *See Treadway v. United Bank & Trust Co. (In re Treadway)*, 117 B.R. 76, 81 (Bankr.D.Vt.1990) (citing *Taxel v. Commercebank (In re World Financial Center, Inc.)*, 64 B.R. 980, 986 (Bankr. S.D.Cal.1986)).

ceeding is in part a core proceeding and in part non-core, the courts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant."[3] On the other hand, the rationale for this claim-by-claim approach has been well-articulated by the Third Circuit Court of Appeals:

> [T]he claim-by-claim approach [i]s the only one consistent with the teachings of *Marathon*.... [W]e would be required to sanction the entry of judgment by an Article I judge on a pre-petition state law contract claim where neither party is in bankruptcy [if the "predominately core" test were employed].

*Halper v. Halper*, 164 F.3d 830, 839 (3rd Cir.1999).[4]

The Fourth Circuit Court of Appeals has not addressed how the bankruptcy court should determine the extent of a bankruptcy court's core jurisdiction when presented with mixed claims. Given the continuing deference to the *Marathon* decision, as articulated in *Apex Express*, this Court believes it must reject the alternate "predominantly core" test and, instead, conduct a count-by-count analysis of each of the Trustee's specific claims. For particular claims found to be non-core, the Court must submit proposed findings of fact and conclusions of law to the district court. As *Halper* suggests, this approach is the most faithful to *Marathon's* holding and is the most consistent with the bankruptcy court's jurisdictional limitations.

■ The Trustee has argued that the claims asserted in this adversary proceeding are core proceedings, in part, because they represent claims the Trustee advances in his official capacity pursuant to 11 U.S.C. § 544.[5] This argument is misplaced. In determining whether a proceeding is core or non-core, "both the form and substance of the proceeding must be examined." *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 608 (S.D.Tex.1999) (citing *In re Hughes–Bechtol, Inc.*, 141 B.R. at 949). The critical focus of the inquiry as to whether a proceeding is core is "not on who is bringing the lawsuit but on what the lawsuit is about." *Poole v. Money*

---

**3.** *See, e.g., Hughes–Bechtol, Inc. v. Ohio (In re Hughes–Bechtol, Inc.)*, 141 B.R. 946, 949 (Bankr.S.D.Ohio 1992); *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 111 B.R. 892, 901 (Bankr.S.D.Cal.1990); *Sibarium v. NCNB Tex. Nat'l Bank*, 107 B.R. 108, 115 (N.D.Tex.1989); *Gagel v. Kingston–Greene Partners, Ltd. (In re GWF Invs., Ltd.)*, 85 B.R. 771, 778 (Bankr.S.D.Ohio 1988); *Blackman v. Seton (In re Blackman)*, 55 B.R. 437, 443 (Bankr.D.D.C.1985).

**4.** For courts that have employed the claim-by-claim analysis see, for example: *Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 425 n. 6 (D.Mass.1995); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 626 (Bankr.D.Mass.1998); *Beneficial Nat'l Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 946 (Bankr.E.D.Tenn.1998); *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 367 (Bankr.S.D.N.Y. 1998).

**5.** 11 U.S.C. § 544(a) provides as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> 11 U.S.C.A. § 544(a) (West 2000).

*Mortgage Corp. (In re Hofmann)*, 248 B.R. 79, 81 (Bankr.W.D.Tex.2000). Nothing within the provisions of § 544 suggests an independent basis for establishment of core jurisdiction, and legion are the various decisions which have concluded that a claim a bankruptcy trustee, debtor or debtor in possession has asserted is a non-core proceeding. This Court instead must examine the nature of each and every claim of the Trustee to discern whether core jurisdiction exists.

It is against this framework that the Court measures whether each of the various counts the Trustee asserts constitute core proceedings for which this Court may render a final judgment.[6]

### COUNT ONE–BREACH OF FIDUCIARY DUTY (MAHESH)

■ Count One of the Complaint seeks judgment against Mahesh, alleging that he breached his fiduciary duties by using the Debtor's assets for his personal gain and to the detriment of the Debtor's creditors, and that he further caused waste of the Debtor's assets through his malfeasance. The Trustee does not specify which particular provision of § 157(b) makes this particular count, or any other particular count, a core proceeding; however, the Trustee generally relies upon the following subsections: (B) pertaining to claim allowance or disallowance; (E) turnover of property of the estate; (H) proceedings to determine, avoid or recover fraudulent conveyances; and (O) other proceedings affecting the liquidation of assets of the estate.

Many courts have found that a proceeding in which a party seeks recovery against an officer or director for a breach of fiduciary duties to a corporate debtor is non-core.[7] Applying *Apex Express*, as well as the factors this Court suggested in *Seven Springs*, Count One's breach of fiduciary duty claim constitutes a non-core proceeding. 28 U.S.C. § 157(b)(2)(B) does not specifically identify this type of claim as a core proceeding. Furthermore, this claim would have been in existence prior to the instant bankruptcy case's filing and would likewise continue to exist independently from the Bankruptcy Code's provisions. The bankruptcy case's filing does not significantly affect the parties' rights, except for the Trustee's substitution as representative party of the debtor corporation, or the debtor corporation's creditors, to assert their rights against the corporation's officers. Lastly, the claim of a corporation or its creditors for breach of fiduciary duty against the corporation's officers and directors is solely a creature of state law, and it can in no manner implicate the public rights found in *Marathon* to permit this Court's assertion of core jurisdiction. Accordingly, Count One constitutes a non-core proceeding.

### COUNT TWO–UNLAWFUL DISTRIBUTIONS BY DEBTOR'S SOLE DIRECTOR PURSUANT TO VIRGINIA CODE § 13.1–653 (MAHESH)

■ Count Two alleges that Mahesh approved the transfer of the Debtor's

---

6. The Defendants, Bharti, Milap and Seema, have requested a jury trial for this adversary proceeding, which this Court is not authorized to conduct. *See* 28 U.S.C.A. § 157(e) (West 2000). Accordingly, even were this Court to conclude all the counts were core proceedings, the district court must conduct any trial on the merits as to these Defendants, to the extent a right to jury trial exists for each count.

7. *See, e.g. WRT Creditors*, 75 F.Supp.2d at 608; *Mellon v. Delaware & Hudson Ry. (In re Delaware & Hudson Ry.)*, 122 B.R. 887, 889–94 (D.Del.1991); *Simplified Info. Sys., Inc. v. Cannon (In re Simplified Info. Sys., Inc.)*, 89 B.R. 538, 540 (W.D.Pa.1988); *Clark v. Levine (In re Levine)*, 100 B.R. 537, 545 (Bankr. D.Colo.1989). *But see Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.)*, 56 B.R. 927, 932–33 (Bankr.E.D.N.C. 1986) (cause of action, seeking lien avoidance, alleging breach of fiduciary duty by debtor's majority stockholders and directors in encumbering debtor's assets with deed of trust was core proceeding because of jurisdiction over property of debtor's estate).

funds for his own benefit or for the benefit of friends and family members at a time the Debtor was unable to pay its debts as they became due in violation of § 13.1–653 of the Virginia Code ("Virginia Unlawful Distribution Act").[8] No decisions have considered whether a claim under the Virginia Unlawful Distribution Act is a core proceeding if brought as an adversary proceeding in a bankruptcy case.[9]

Only two bankruptcy decisions appear to have considered statutes or claims similar to the Virginia Unlawful Distribution Act in the context of core/non-core jurisdiction. In *In re Delaware & Hudson*, the trustee sought damages from former and present officers and directors for, among other things, the alleged declaration of unlawful dividends, pursuant to New York and De-

laware statutes. In concluding that this claim was a non-core, related to proceeding, the district court employed reasoning similar to that in *Apex Express*:

> The state law claims at issue ... existed prior to and independent of the filing of the instant bankruptcy .... If admittedly state law claims such as those underlying ... were classified as "core" proceedings based upon the connection ... that the proceeds of the action will become part of the sum to be distributed to creditors of the bankrupt debtor, the teachings of the U.S. Supreme Court in *Marathon* would be effectively eradicated. Every proceeding could be characterized as a core proceeding, because every recovery has some effect on the size of the bankrupt's estate. This is

8. § 13.1–653 of the Virginia Code provides:
 A. A board of directors may authorize and the corporation may make distributions to its shareholders, subject to restriction by the articles of incorporation and the limitation in subsection C of this section.
 B. If the board of directors does not fix the record date for determining shareholders entitled to a distribution, other than one involving a repurchase or reacquisition of shares, it is the date the board of directors authorizes the distribution.
 C. No distribution may be made if, after giving it effect:
 1. The corporation would not be able to pay its debts as they become due in the usual course of business; or
 2. The corporation's title assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.
 D. The board of directors may base a determination that a distribution is not prohibited under subsection C of this section either on financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances.
 E. The effect of a distribution under subsection C of this section is measured:

1. In the case of a distribution by purchase, redemption, or other acquisition of the corporation's shares, as of the earlier of (i) the date money or other property is transferred or debt incurred by the corporation or (ii) the date the shareholder ceases to be a shareholder with respect to the acquired shares;
2. In the case of any other distribution of indebtedness, as of the date the indebtedness is distributed;
3. In all other cases, as of (i) the date the distribution is authorized if the payment occurs within 120 days after the date of authorization or (ii) the date payment is made if it occurs more than 120 days after the date of authorization.
 F. A corporation's indebtedness to a shareholder incurred by reason of a distribution made in accordance with this section is at parity with the corporation's indebtedness to its general, unsecured creditors except to the extent subordinated by agreement.
 Va.Code Ann. § 13.1–653 (Michie 1999).

9. The only reported case involving the Virginia Unlawful Distribution Act in a bankruptcy context did not consider the jurisdictional issues raised here. *See In re C–T of Va., Inc.*, 124 B.R. 694 (W.D.Va.1990) (in action originally brought in district court, official creditors committee for debtor brought suit against former corporate officers and directors claiming, in part, that approved merger constituted unlawful distribution under Virginia law), *aff'd*, 958 F.2d 606 (4th Cir.1992).

obviously contrary to what Congress intended when it statutorily distinguished between core and non-core proceedings. *In re Delaware & Hudson*, 122 B.R. at 894–95.

In *In re Atlas Fire*, the debtor alleged that the defendants violated a North Carolina statute that renders a shareholder liable for a distribution from a corporation when the corporation is unable to meet its obligations as they mature.[10] The bankruptcy court concluded that this and other state law counts were core proceedings because the court had jurisdiction to determine the ultimate goal of the various counts in the proceeding—to avoid a deed of trust on estate assets the corporate debtor gave as part of a buyout of the defendants' shares of the debtor's stock. *See Atlas Fire*, 56 B.R. at 933.

The proceeding here is factually distinguishable from the circumstances presented in *Atlas Fire*. Here, the arguments for jurisdictional extension lie in the Trustee's contention that he seeks "turnover" of estate assets and to recover the Debtor's monies that were wrongfully paid to Mahesh and his family. This "turnover" argument appears to be conclusively rejected by the Fourth Circuit Court of Appeals in *Apex Express*. Furthermore, an action for recovery under the Virginia Unlawful Distribution Act does not closely enough resemble an attempt to recover a fraudulent conveyance to permit its characterization as a core proceeding under 28 U.S.C. § 157(b)(2)(H). While the Fourth Circuit Court of Appeals has concluded that wholly state law based avoidance actions may be considered as proceedings to avoid a fraudulent conveyance, *see Huffman v. Perkinson (In re Harbour)*, 840 F.2d 1165, 1169 (4th Cir.1988), *cert. granted, judgment vacated on other grounds sub nom. Perkinson v. Huffman*, 492 U.S. 913, 109 S.Ct. 3234, 106 L.Ed.2d 582 (1989),[11] a proceeding under the Virginia Unlawful Distribution Act defies such a characterization by its terms. Rather than permit a direct recovery from a transferee of a fraudulent conveyance, as most state avoidance statutes contemplate, the Virginia Unlawful Distribution Act establishes a corporate distribution's unlawfulness when made after a corporation fails either of two

10. North Carolina General Statute § 55–54, at the time of the decision in *In re Atlas Fire*, provided as follows:

> Any shareholder who receives any redemptive or purchase price upon the redemption or purchase by a corporation of its shares or who receives any dividend or other withdrawal or distribution from the corporation, either at a time when the corporation is or thereby will be rendered unable to meet its obligations as they mature in the ordinary course of business, or when the shareholder has knowledge that such receipt diminishes assets of the corporation contrary to the provisions of this Chapter, shall be liable to the corporation for the amount so received, including the amount of any obligation to the corporation thereby released, but this liability is subject to the same limitation as to time and amount as is contained in subsections (d) and (m) of G.S. 55–32 with respect to the liability of directors. Any number of shareholders may be sued in the same action.

N.C. Gen.Stat. § 55–54 (1986).

11. In concluding a state-law based fraudulent conveyance avoidance action by a bankruptcy trustee was a core proceeding, the Fourth Circuit Court of Appeals relied upon the specific statutory language of § 157(b)(2)(F) and (H) and of § 544 of the Bankruptcy Code:

> First, the language of section 157(b)(2)(F) and (H) does not limit the proceedings to avoid preferences and fraudulent transfers only to these proceedings authorized by sections 547 and 548 of the Bankruptcy Code. It embraces state avoidance laws and includes them as part of the bankruptcy proceedings (footnote omitted). The legislative history of section 157(b) certainly demonstrates that this was the intent of Congress. Moreover, section 544(b) gives trustees in bankruptcy the same authority to avoid transfers that an unsecured creditor would have under state law.

*In re Harbour*, 840 F.2d at 1170–71. None of these considerations are applicable here to render an action by a trustee under the Virginia Unlawful Distribution Act as a core proceeding.

insolvency tests. Creditors cannot recover a shareholder distribution directly under the Virginia Stock Corporation Act. *See In re C–T of Virginia,* 958 F.2d at 609.[12] The Virginia Unlawful Distribution Act is more aptly characterized as establishing a standard of conduct for corporate directors, rather than as a state-law based fraudulent conveyance vehicle; accordingly, Count Two of the Complaint sounds as a non-core proceeding.

## COUNT THREE—USURPATION OF CORPORATE OPPORTUNITY (MILAP AND SEEMA)

■ Count Three of the Complaint alleges that defendants Milap and Seema owed the debtor and its creditors a duty of loyalty that they breached when they, with the assistance of others, took the Alabama Contract from the Debtor and assigned it to SAI, thereby usurping a corporate opportunity of the Debtor. *In re McCray,* 209 B.R. 410 (Bankr.N.D.Miss.1997), is the sole reported decision to consider whether a claim founded specifically upon a usurpation of corporate opportunity theory is a core proceeding. There, a corporation brought a declaratory judgment action against a Chapter 7 debtor-shareholder seeking an adjudication that it was solely entitled to the proceeds from the sale of a cable television franchise. The complaint alleged fraud, misrepresentation, and usurpation of corporate opportunity, among other causes. After reviewing the legislative history of the Bankruptcy Code, the bankruptcy court concluded that none of the causes of action arose under the Bankruptcy Code. *See id.* at 413.[13]

■ Applying the *In re Seven Springs* criteria, Count Three is a non-core proceeding. An usurpation of a corporate opportunity claim is not specifically enumerated among the core proceedings listed in § 157(b)(2)(B), and any claim under this theory existed prior to the filing of the case, and would continue to exist independent of the Bankruptcy Code's provisions. Likewise, the entry of the relief order does not affect significantly the parties' rights and obligations under such a claim. In addition, under Virginia law, a claim for usurpation of corporate opportunity is considered a type of breach of fiduciary duty. *See Feddeman & Co. v. Langan Assoc.,* 260 Va. 35, 530 S.E.2d 668 at 675 n. 1 (2000). Thus, the reasoning for why Count One is non-core equally applies to Count Three. Accordingly, the Court concludes that Count Three is a non-core proceeding.

---

12. § 13.1–692 of the Virginia Code provides for a director's liability for an unlawful distribution:

Unless he complies with the applicable standards of conduct described in § 13.1–690, a director who votes for or assents to a distribution made in violation of this chapter or the articles of incorporation is personally liable to the corporation and its creditors for the amount of the distribution that exceeds what could have been distributed without violating this chapter or the articles of incorporation.

Va.Code Ann. § 13.1–692(A) (Michie 1999). A director may seek contribution from shareholders who received the distribution. *See* Va.Code Ann. § 13.1–692(B)(2) (Michie 1999).

13. Few reported decisions have considered assertion of usurpation of corporate opportunity claims in a bankruptcy context and none have analyzed whether such claims are core or non-core. *See, e.g., Committee of Unsecured Creditors of Specialty Plastic v. Doemling,* 127 B.R. 945 (W.D.Pa.1991) (determining, without analyzing whether core proceeding, that bankruptcy court had jurisdiction over adversary proceeding unsecured creditors committee commenced alleging Chapter 11 debtor's sole shareholder and president had usurped a corporate opportunity of the debtor post-reorganization); *Official Comm. of Unsecured Creditors of Joyanna Holitogs, Inc. (In re Joyanna Holitogs, Inc.),* 21 B.R. 323 (Bankr.S.D.N.Y.1982) (granting leave to amend complaint seeking recovery of funds allegedly transferred to defendants as preference in order to assert cause of action based upon an alleged diversion of corporate opportunities and waste of corporate opportunities, without core jurisdiction determination).

## COUNT FOUR—BUSINESS CONSPIRACY (ALL SHAH DEFENDANTS)

██ Count Four asserts that all the Shah defendants actively combined, associated, agreed, and mutually undertook to deprive the Debtor and its creditors of valuable assets and to prevent and hinder the Debtor from paying its lawful debts and obligations as they came due. These acts, the Trustee alleges, constitute violations of § 18.2–499(A) of the Virginia Code, and, as a result of these violations, the Shah defendants are liable to the Trustee for trebled civil damages, including loss of profits and reasonable costs and attorney's fee pursuant to § 18.2–500(a) of the Virginia Code.[14]

No reported decisions have considered the Virginia Civil Conspiracy Statute in the context of the core/non-core determination.[15] Most decisions considering a claim founded on a non-statutory civil conspiracy asserted in a bankruptcy context have concluded such a claim is not a core proceeding.[16]

This Court believes that a majority of these courts' conclusion that civil conspiracy claims are non-core is correct. Here, the claim sounds solely under Virginia statutory law and the bankruptcy case pendency does not affect the action. Accordingly, this Court finds that Count Four, asserting violation of the Virginia Civil Conspiracy Statute, constitutes a non-core proceeding.

14. Section 18.2–499(A) of the Virginia Code provides as follows:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2–500.

Va.Code Ann. § 18.2–499(A) (Michie 1999). Section 18.2–500(a) of the Virginia Code provides as follows:

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel; and without limiting the generality of the term, "damages" shall include loss of profits. Such counsel shall in no case receive any other, further or additional compensation except that allowed by the court and any contract to the contrary shall be null and void.

Va.Code Ann. § 18.2–500(a) (Michie 1999) (hereinafter collectively "Virginia Civil Conspiracy Statute").

15. In *Runnells v. Levy,* 77 B.R. 41 (E.D.Va. 1986), the chapter 7 trustee filed a complaint in the bankruptcy court to recover property, set aside fraudulent conveyances and post-petition transfers and avoid preferences. La-ter the trustee amended its complaint to assert these same claims and what was described a "state law conspiracy charge." The opinion is unclear whether this claim was one sounding under Va.Code Ann. § 18.2–499(A) or was a conspiracy claim founded upon common law.

16. *See, e.g., WRT Creditors,* 75 F.Supp.2d at 608–11; *Lux v. Spotswood Constr. Loans,* 176 B.R. 416, 418 (E.D.Va.1993); *Woods v. Passodelis (In re Passodelis),* 234 B.R. 52, 60–61 (Bankr.W.D.Pa.1999); *In re Heelco Corp. (Krafsur v. Clay),* 167 B.R. 445, 447 (Bankr. W.D.Tex.1994); *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.),* 132 B.R. 979, 980 (Bankr.S.D.Ga.1991); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 95 B.R. 782, 784 (Bankr.D.Colo.1989), *aff'd,* 109 B.R. 968 (D.Colo.1989); *Braun v. Zarling (In re Zarling),* 85 B.R. 802 (Bankr.E.D.Wis.1988); *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 89 B.R. 658, 663 (Bankr.S.D.Ohio 1988), *rev'd on other grounds,* 131 B.R. 799 (S.D.Ohio 1990). *But see In re Levine,* 100 B.R. at 543–44 (trustee's claims for civil conspiracy including bankruptcy fraud are core "because, at a minimum, the [claim] has a reasonable nexus to the bankruptcy case"); *Runnells v. Levy,* 77 B.R. at 43 ("After a review of the entire amended complaint, including its claims of fraudulent conveyances, preference transfers, etc., including even the state law conspiracy charge, this Court would concur that the proceedings are, indeed, 'core proceedings.'"). A review of the district court's opinion in *Runnells,* suggests the court there may have been applying a "predominantly core" test which this Court believes must be rejected. *See infra.*

## COUNT FIVE—PIERCING THE CORPORATE VEIL (SEEMA AND BHARTI)

 Count Five seeks the imposition of personal liability upon Seema and Bharti, alleging that SAI and REEMA, respectively, disregarded corporate formalities, conducted their business affairs inseparably from the Debtor's, commingled their financial affairs with the Debtor, and generally held themselves out to the Debtor's creditors as the Debtor's corporate alter ego. By committing such acts or omissions, the Trustee alleges that the sole shareholders of SAI and REEMA have forfeited the protections the corporate veil of these corporations affords and thereby are liable for the corporations' respective obligations.

Courts considering whether "veil-piercing" or "alter ego" claims are subject to the core jurisdiction of the bankruptcy court are split on the issue.[17] A common thread exists among the relevant decisions, however, in their conclusion that the action, in effect, seeks recovery of assets of the estate; in other words, the trustee or debtor seeks a "turnover" of estate assets. *See Freehling v. Nielson (In re F & C Servs., Inc.),* 44 B.R. 863, 867 ("It is well established that property of the debtor in the possession, custody and control of its alter ego comprises property of the estate at the time of commencement of the case"). *But see United States v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law that ... turnover actions under § 542 cannot be used 'to demand assets whose title is in dispute.' "); *In re Acolyte Elec. Corp.,* 69 B.R. at 171 ("To the extent that a BONAFIDE dispute exists with regard to the existence of an identifiable fund or res, a proceeding to recover that res is not a turnover ... unless and until the existence, magnitude and identity of the res are first established. The jurisdiction to establish this existence, magnitude and identity is precisely what *Marathon* prohibits Congress from granting to the bankruptcy court").

The Court need not resolve these varied views of the extent of a bankruptcy court's jurisdiction over an alter ego action in order to conclude that the instant theory of recovery is not a core proceeding. Here, the Trustee's claim is not asserted against the alleged alter ego corporation,[18]

---

17. *See, e.g., St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2nd Cir. 1989) ("proceedings having effect of bringing property into debtor's estate are core proceedings as defined by section 157(b)."); *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.),* 230 B.R. 36, 44 (Bankr.D.N.J. 1998) ("Where state law...provides that an alter ego may be asserted by a debtor corporation, an action on such claim by a bankruptcy trustee is a core proceeding under U.S.C. § 157(b)(2)(E) et al."); *Martinson v. Towe (In re Towe),* 151 B.R. 262, 263 (Bankr. D.Mont.1993) ("This action is a core proceeding under 28 U.S.C. § 157(b)(2)(E) seeking to establish that property in possession of each corporate defendant is property of the debtor's estate"). *But see Davis v. Merv Griffin Co.,* 128 B.R. 78, 96 (D.N.J.1991) ("[T]his court finds that the so called alter ego action of *Davis* is not a core proceeding under 28 U.S.C. § 157."); *BNI Telecommunications, Inc. v. Lomaz (In re BNI Telecommunications, Inc.),* 246 B.R. 845, 849 (6th Cir. BAP 2000) ("[O]f particular significance in this case is the recognition that the debtor is the plaintiff seeking veil piercing against non-bankruptcy defendants. [T]his is a purely state law cause of action that does not fall within the core of federal bankruptcy power."); *In re J. Baranello Sons, Inc.,* 149 B.R. at 24 ("[T]he nature of the plaintiff's claim for relief in the adversary proceeding to pierce the corporate veil is clearly founded upon state law, was created by state courts and does not 'fall within the core of federal bankruptcy power' "); *In re Julien Co.,* 120 B.R. 930, 936 (Bankr. W.D.Tenn.1990) ("Piercing the veil is a state law remedy ... [and hence] an action based upon a veil piercing or alter ego theory could not be a core proceeding."); *In re Lee Way Holding Co.,* 105 B.R. 404, 411 (Bankr. S.D.Ohio 1989) (claim brought by trustee against non-debtor defendant based on Ohio alter ego law was action related to bankruptcy case);.

18. The Trustee has brought an alter ego action against SAI and REEMA in a separate adversary proceeding filed in this Court, styled *Richard W. Hudgins, Trustee v. Seema Al., Inc. and Real Estate Equity & Mgmt. Assocs., Inc.,* adversary proceeding 00–4007–S.

but rather, the Trustee contends that by avoiding corporate formalities, etc. the sole shareholders of the alleged alter ego corporations are liable for the respective alter ego's liabilities. No expansive reading of these allegations can even suggest that this theory is an assertion of the Trustee's turnover powers. Furthermore, the claim obviously sounds solely under state law and in no manner can be construed as falling under any of the enumerated actions set forth in 28 U.S.C. § 157(b)(2)(B). Therefore, the claims asserted in Count Five are not core proceedings.

### COUNT SIX—FRAUDULENT TRANSFER (ALL SHAH DEFENDANTS)

■ Count Six seeks recovery of transfers that the various Shah defendants allegedly received from the Debtor, made in contradiction of 11 U.S.C. § 548(a).[19] Count Six requires little analytical exertion. An action by a chapter 7 trustee to recover alleged fraudulent conveyances un-

der the Bankruptcy Code is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(H)(2000); *see also In re Harbour*, 840 F.2d at 1169–70. Accordingly, Count Six seeking recovery of alleged fraudulent conveyances pursuant to 11 U.S.C. § 548(a) is a core proceeding.

### COUNT SEVEN—EQUITABLE SUBORDINATION OF INSIDER CLAIMS (ALL SHAH DEFENDANTS)

■ Count Seven of the Complaint alleges that any claims or liens the Shah Defendants assert against the debtor or any property of the Debtor's estate should be subordinated pursuant 11 U.S.C. § 510(c) because of misconduct against the debtor.[20] An analysis of Count Seven demands minimal exertion.

Virtually all courts that have considered the nature of equitable subordination claims under § 510 of the Bankruptcy Code have concluded such actions are core proceedings.[21] *See* 28 U.S.C.A.

**19.** 11 U.S.C. § 548(a) provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was involvement on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
>
> 11 U.S.C.A. § 548(a) (West 2000).

**20.** 11 U.S.C. § 510(c) provides in pertinent part, as follows:

> [A]fter notice and a hearing, the court may—
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.
>
> 11 U.S.C.A. § 510(c) (West 2000).

**21.** *See, e.g., Bank of New Richmond v. Production Credit Assoc. (In re Osborne)*, 42 B.R. 988, 992 (W.D.Wis.1984); *Aetna Life Ins. Co. v. Danbury Square Assocs. (In re Danbury Square Assocs.)*, 150 B.R. 544, 547 (Bankr.S.D.N.Y. 1993); *Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 43 (Bankr. S.D.N.Y.1993); *Otasco, Inc. v. American Manufacturers Mutual Ins. Co. (In re Otasco, Inc.)*, 110 B.R. 964, 966 (Bankr.N.D.Okla.1990); *Glinka v. Dartmouth Banking Co. (In re Kelton Motors)*, 121 B.R. 166, 189 (Bankr.D.Vt. 1990);. *In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 969–70 (Bankr.E.D.Pa.1988); *Martin Specialty Vehicles, Inc. v. Bank of Boston*

§ 157(b)(2)(O). Sounding as it does under a specific Bankruptcy Code provision, and expressly implicating the determination of claims and the nature and extent of liens against the Debtor and its estate, Count Seven, seeking equitable subordination against the Shah Defendants, is a core proceeding.

### Are Counts One—Five Related Proceedings?

 While concluding Counts One, Two, Three, Four, and Five are not core proceedings, the Court must still determine whether they are "otherwise related" in order for the Court to be able to hear them and to make proposed findings of fact and conclusions of law. *See* 28 U.S.C.A. § 157(c)(1). "Non-core" or "related proceedings" are contrasted to those proceedings that would exist independently outside of bankruptcy. *See Wood v. Wood (In re Wood),* 825 F.2d at 97. The Fourth Circuit Court of Appeals has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984), which states that the dispositive determination for when a civil proceeding is related to bankruptcy is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994. *Accord Owens—Il., Inc. v. Rapid Am. Corp. (In re The Celotex Corp.),* 124 F.3d 619, 624 (4th Cir.1997); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir.1986). A proceeding need not be against the debtor or against the debtor's property; an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankruptcy estate. *See A.H.*

*Robins,* 788 F.2d at 1002 n. 11 (citing *Pacor,* 743 F.2d at 994).

Each of these counts appears to easily satisfy the *Pacor* test. All of the claims the Trustee asserts certainly have a possible affect on the Debtor's rights, liabilities, and options and permit this Court to assert jurisdiction. Therefore, all claims the Court finds are not core proceedings are otherwise related, and the Court may make proposed findings of fact and conclusions of law as to those claims pursuant to 28 U.S.C. § 157(c)(1), and in accordance with Federal Rule of Bankruptcy Procedure 9032.

### Determination

The Court DETERMINES as follows: Count One (Breach of Fiduciary Duty), Count Two (Unlawful Distributions), Count Three (Usurpation of Corporate Opportunity), Count Four (Business Conspiracy), and Count Five (Piercing the Corporate Veil) are non-core, otherwise related to proceedings. Count Six (Fraudulent Transfer) and Count Seven (Equitable Subordination) are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B).[22]

IT IS SO ORDERED.

---

*(In re Martin Specialty Vehicles, Inc.),* 71 B.R. 221, 223 (Bankr.D.Mass.1987).

**22.** The Court currently has under advisement Bharti. Milap, and Seema's Motion to Dismiss Counts Three and Five of the Complaint. Based on the Court's determination that counts three and five constitute non-core, otherwise related proceedings, the Court shall issue forthwith a Research and Recommendation Report containing within it the Court's proposed conclusions of law in conjunction with that motion, in accordance with 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9032.